PEOPLE *v.* KANGAS.

1. NEW TRIAL—INSTRUCTIONS TO JURY OUT OF COURT—PREJUDICE.
   Communications or instructions to the jury, after they have retired for deliberations, out of court and in the absence of the parties or their counsel, are grounds for a new trial, regardless of whether such communications or instructions were prejudicial, as a trial must be free, not only from prejudice, but from the appearance thereof.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]   39 Am Jur, New Trial § 102; 53 Am Jur, Trial § 904.
   Furnishing or reading instructions to jury, in jury room, after retirement, as error.   96 ALR 899.
[2]   53 Am Jur, Trial § 905.
   Prejudicial effect, in criminal case, of communication between court officials or attendants and jurors.   41 ALR2d 227.

2. SAME—INSTRUCTIONS TO JURY OUT OF COURT—SHERIFF.
A new trial is granted where, after jury had retired for its de-
liberations, the sheriff entered the jury room in response to
a knock on the door, he came out, saw the trial judge in private,
returned to the jury room, and talked with the jurors, jury
returned to courtroom and was not instructed to disregard
instructions given them through sheriff, again retired, and sub-
sequently came back with manslaughter verdict.

Appeal from Wexford; Peterson (William R.), J.
Submitted October 12, 1961. (Docket No. 94, Calen-
dar No. 49,053.) Decided March 19, 1962.

Carl Wayne Kangas was convicted of man-
slaughter. Reversed with new trial granted.

*Paul L. Adams,* Attorney General, *Joseph B.*
*Bilitzke,* Solicitor General, and *Burton A. Hines,*
Prosecuting Attorney, for the people.

*Clem H. Block,* for defendant.

KAVANAGH, J. Defendant was convicted by a jury
in the Wexford county circuit court of a charge of
manslaughter. Motion for new trial was denied, and
application for leave to appeal was granted by this
Court.

Defendant was originally charged with second-
degree murder. A motion to dismiss the murder
charge was made, and, at the conclusion of the peo-
ple's proofs, the trial judge granted the motion.

The charge grew out of the following factual situa-
tion:

On December 18, 1959, the defendant drove to the
home of his estranged wife on the outskirts of Cad-
illac in a car belonging to a woman friend. It was
around 5 o'clock in the afternoon, and his purpose
was to feed his dogs. At this time his wife arrived
home from work accompanied by his daughter Joann.

Mrs. Kangas parked her car so as to block her husband's exit. When he was ready to leave the premises he asked Mrs. Kangas, who was in the kitchen preparing food, to move her car. She did not immediately come out of the house, and defendant proceeded to her car to determine if she had left the keys in it, but not finding them he returned to the car he was driving. His wife came out of the house with a paring knife and approached the rear tire on the driver's side of the car her husband was driving. Defendant got out of his car and asked her what she was doing. His wife arose from a squatting position and, holding the knife in front of her, moved toward defendant and said, "I'll show you, you and your damn car."

There is a sharp conflict in the testimony as to what followed. Defendant contends he swung his hand in a manner so as to knock the knife out of his wife's hand. The daughter Joann testified she saw his hand open and he struck her mother on the side of the face. Either as a result of the force of the blow, or partially from the blow and partially because of ice that covered the yard, Mrs. Kangas fell, landing on the back of her head. Defendant, with the assistance of his daughter, carried his wife into the house and called an ambulance to take her to the hospital, where she was pronounced dead on arrival.

When Mrs. Kangas was taken to the funeral parlor it was discovered her upper denture was broken in 3 pieces—one large piece of the upper right portion of the denture which represented about 2/3 of her plate, and 2 smaller pieces of about the same size which represented the remainder of her plate.

Defendant was questioned and released by the State police. On December 22, 1959, an inquest was ordered. On December 28, 1959, a coroner's jury found no evidence on which they could hold Mr. Kangas and no charges were placed against him.

Two doctors testified at the inquest that they had performed an autopsy.

On January 8, 1960, the body of Mrs. Kangas was exhumed and an examination made by Dr. Black, a pathologist from Lansing. Dr. Black attempted to remove the large piece of denture from Mrs. Kangas' mouth, but was unable to do so. She was again interred.

On January 13, 1960, Mr. Kangas was arrested for the second-degree murder of his wife. After the granting of the motion to strike the second-degree murder charge, the trial proceeded on a manslaughter charge.

On appeal defendant raises the following alleged errors:

1. The trial court erred in authorizing instructions to the jury through a sheriff after the jury had requested instructions of the sheriff in jury chambers.

2. The trial court erred in submitting to the jury the question of manslaughter where the undisputed evidence showed that death occurred when Mrs. Kangas slipped and fell on the ice after advancing toward her husband with a knife, and her husband, in order to protect himself, attempted to knock the knife out of her hand by striking the hand in which she held the knife, causing her to slip.

3. The trial court erred in refusing to grant a new trial where it developed that the force of the blow required to break dentures was of the utmost importance in the trial of the case, and where the prosecuting attorney during the time intervening between the death of Mrs. Kangas and the trial broke parts of an upper dental plate of Mrs. Kangas without explaining to the jury how the breakage occurred, and these facts were made known to the trial judge on the motion for new trial.

4. The trial court erred in determining that no prejudicial error occurred from the fact the officer in

charge of the jury throughout the trial drove one of the jurors to and from court.

5. The trial court erred in allowing the jury to weigh testimony in considering their verdict, where the only evidence was opinion evidence of a doctor performing an autopsy after getting all of his information from law-enforcement officers and without visiting the scene of the alleged crime, where some of the evidence on which he based his opinion was to the effect Mrs. Kangas had been hit by a crowbar, and where the doctor was asked no hypothetical questions based on the evidence as submitted in court.

The facts with reference to the first alleged error are as follows:

During the course of the deliberations, there was a knock on the jury room door and the sheriff went into the jury room. Some conversation occurred, after which the sheriff came out and asked to see the trial judge. The sheriff talked with the trial judge in private. In his opinion on motion for new trial, the judge stated he had discussed the matter with both counsel and together they researched the point in question. Later the judge, out of hearing of counsel, instructed the sheriff to return to the jury room, where he talked with the jurors. Shortly thereafter, the judge called the jurors into open court and instructed the jury. In his instructions the judge acknowledged he had given them instructions through the sheriff and stated he wanted to clear up any points concerning instructions. He did not advise the jury to disregard the instructions given them by the sheriff. The jury left the courtroom for further deliberations and subsequently came back with a manslaughter verdict.

66 CJS, New Trial § 48, p 163, has the following to say with respect to communications with jurors:

"A communication to the jury, as ground for a new trial, should be a material communication; and any communication with the jurors after they have retired for deliberation, by any person, which is not made in open court and in the presence of the parties or their representatives, may be ground for setting aside the verdict and granting a new trial, even though the communication was not prompted by any improper motives and even though the jury were not influenced in arriving at their verdict."

In *Wiedenhaupt* v. *Hoelzel,* 254 Wis 39 (35 NW2d 207), the court held that a defeated party is not required to show that a communication to the jury not made in open court was in fact prejudicial, where after retirement the jury informed the bailiff they desired further instructions. The bailiff then notified the court reporter, who, in the absence of counsel and the parties, went into the jury room and made some notes and called the trial judge by telephone. The trial judge gave a statement to the reporter who thereupon, again in the absence of counsel and the parties, went into the jury room and made a statement to the jury respecting their answers to the questions involved. The court said the rule that jury instructions must be given in open court is strict and that any deviation from the rule has generally been treated as sufficient ground for setting aside the verdict, even though the communication was not prompted by improper motives and even though it had not influenced the jury in arriving at their verdict.

Other jurisdictions support the Wisconsin rule that communications or instructions by the court to the jury, after they have retired for deliberations, out of court and in the absence of the parties or their counsel, are grounds for a new trial, regardless of whether such communications or instructions were

prejudicial. See *Read* v. *Cambridge,* 124 Mass 567 (26 Am Rep 690).

In *State* v. *Cotter,* 262 Wis 168 (54 NW2d 43, 41 ALR2d 222), a case involving an unauthorized communication to the jury, the court said (p 173): ·

"Even though no prejudice was shown and even though the instructions by the trial judge would tend to eliminate prejudice, if any in fact existed, a trial must be free not only from prejudice, but from the appearance thereof, and the rule must be adhered to in this case."

In the very early case of *People* v. *Knapp,* 42 Mich 267 (36 Am Rep 438), Justice COOLEY said (pp 269, 270):

"It is not claimed that the officer can with propriety be allowed to be within hearing when the jury are deliberating. Whether he does or does not converse with them, his presence to some extent must operate as a restraint upon their proper freedom of action and expression. When the jury retire from the presence of the court, it is in order that they may have opportunity for private and confidential discussion, and the necessity for this is assumed in every case, and the jury sent out as of course, where they do not notify the court that it is not needful. *The presence of a single other person in the room is an intrusion upon this privacy and confidence, and tends to defeat the purpose for which they are sent out."* (Emphasis supplied.)

In the case of *Churchill* v. *Alpena Circuit Judge,* 56 Mich 536, Justice CAMPBELL said (p 540):

"The only safe rule must be to treat the jury as disqualified to settle the rights of litigants as soon as they cease to be guarded against unlawful contact with the outside world. The right to a strictly preserved protection against undue influence cannot be made to depend on discretion."

As late as 1937 Justice POTTER, writing for this Court in *People* v. *Chambers,* 279 Mich 73, in reversing the lower court and granting a new trial, said (p 80):

"It may be the acts or conduct of the officer had nothing to do with the deliberations of the jury or the conclusions which they arrived at. He (the court officer) had no business in the jury room. If it was necessary to furnish water to the jurors, it could have been furnished and he could have remained outside. * * * It is important that the officer be not guilty of any misconduct that could have influenced the jury, and that his conduct not furnish any ground for suspicion the jury was being tampered with or might be tampered with or was deliberating in his presence."

We call to the attention of the trial judges of this State their duty to safeguard trial by jury from any suspicion the jury may be tampered with while deliberating. Frequently of late this Court has had similar incidents called to its attention by appeal in which there is reason to believe the opportunity for jury tampering was present.

Under the circumstances in this case a new trial must be granted.

In view of the fact a new trial will take place, we do not believe it necessary to answer the other questions presented, except to caution trial judges that bailiffs, sheriffs, and other court personnel should be warned about practices involving associations with jurors both in and out of the courtroom which might create the opportunity to influence their decisions.

The order denying the motion for a new trial is reversed, and a new trial is granted.

DETHMERS, C. J., and CARR, KELLY, BLACK, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., took no part in the decision of this case.