PEOPLE *v.* SCHRAM.

OPINION OF THE COURT.

1. CRIMINAL LAW—JOINT TRIALS—SEPARATE INFORMATIONS.
   Trial court did not commit reversible error when it consolidated for trial 2 separate informations charging joint violators with the same crime, where each was arrested, arraigned, examined, and informed against at different times (CL 1948, § 768.5).

2. SAME—SEPARATE INDICTMENTS—JOINT TRIAL.
   Joinder or consolidation for trial where 2 or more defendants are separately indicted is not forbidden, in the absence of express statutory authority, merely because a statute grants trial court discretion to try 2 or more defendants separately or jointly, who were jointly indicted (CL 1948, § 768.5).

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 53 Am Jur, Trial § 68.
[6, 9–14] 53 Am Jur, Trial § 906.
   Prejudicial effect, in criminal case, of communication between court officials or attendants and jurors. 41 ALR2d 227.
[7] 39 Am Jur, New Trial §§ 131, 201.
[8] 53 Am Jur, Trial § 905.
[15, 16] 39 Am Jur, New Trial § 105.
[17] 16 Am Jur 2d, Constitutional Law §§ 542, 543.

3. SAME—JURISDICTION—PROCEDURE—CONSOLIDATION.

Jurisdiction is not involved when trial court consolidated for trial 2 separate informations charging joint violators with the same crime, where each was arrested, arraigned, examined, and informed against at different times, as the matter is one of procedure (CL 1948, § 768.5).

4. SAME—CONSOLIDATION FOR TRIAL—SEPARATE INFORMATIONS—PREJUDICE.

Reversible error is committed in the consolidation for trial of 2 separate informations charging joint violators with the same crime, where each was arrested, arraigned, examined, and informed against at different times, only if it can be shown that such consolidation has prejudiced the substantial rights of a defendant (CL 1948, § 768.5).

5. SAME—JURISDICTION—CONSOLIDATION FOR TRIAL—ASSAULT WITH INTENT TO ROB WHILE ARMED.

Consolidation for trial of 2 defendants charged with same crime of assault with intent to rob while armed, but informed against separately, *held*, not reversible error, where the record reveals nothing to suggest that, as to place of crime, type of crime, age of parties or other ingredients of jurisdiction required in such proceedings, the court did not have the power to try the cases (CL 1948, §§ 750.89, 768.5).

6. SAME—PROSECUTOR'S CONVERSATION WITH JURORS—MISTRIAL—DISCRETION OF COURT—PREJUDICE.

Denial of mistrial because of brief conversation between prosecutor and 2 of the jurors in the public corridor outside of the courtroom before deliberations, having nothing to do with the proofs, and initiated by 1 of the jurors *held*, not an abuse of discretion, where record shows trial judge investigated the incident, and ascertained that conversation had to do with the probable duration of the trial and that jurors could try the case without prejudice to either the defense or prosecution, there being no affirmative showing on the record of prejudice or an inference of prejudice.

### SEPARATE OPINION.

#### DETHMERS AND KELLY, JJ.

See headnotes 1–6.

7. NEW TRIAL—DISCRETION OF COURT.

*Generally, the granting or denying of a new trial is a matter within the discretion of the trial court, and the action taken*

*in that respect should not be disturbed on appeal unless it appears that such discretion has been improperly exercised, since the judge who presided at the trial and observed occurrences in the courtroom and elsewhere was in a better position to determine the probability of any conduct on the part of the jurors or others prejudicial to the rights of the defendant than is the Supreme Court.*

### DISSENTING OPINION.

T. M. KAVANAGH, C. J., and SOURIS, J.

8. JURY—COURT OFFICER.

*A court officer should not converse with the jurors at any time, except as necessary to direct them where to go and when, and he should not make any comment upon the case being tried or its conduct, although he is permitted to take to the judge any written questions the jurors may have.*

9. SAME—ASSOCIATION OF JURORS WITH PROSECUTOR.

*It would be improper for a trial judge to question jurors as to their associations with the prosecutor during the trial of a criminal case.*

10. SAME—ASSOCIATION OF JURORS WITH ATTORNEY—PRESUMPTIONS.

*It is presumed that a jury might be infected with prejudice by association with an attorney for one of the parties.*

11. SAME—ASSOCIATION OF JURORS WITH PROSECUTOR—DENIAL OF DUE PROCESS.

*Mere association out of the courtroom of jurors with prosecutor in criminal case held, a denial per se to defendant of due process of law.*

12. SAME—FRATERNIZATION BETWEEN JURORS AND ATTORNEYS—COURT OFFICERS.

*The prohibition against fraternization between attorneys, who inevitably are identified with the party whose cause they advocate, and jurors, is stricter than the prohibition against fraternization between jurors and court officers who are not attorneys.*

13. CRIMINAL LAW—MISTRIAL—COLLOQUY BETWEEN PROSECUTOR AND JURORS.

*Motion for mistrial in criminal case where members of jury conversed with prosecutor during trial held, improperly denied on basis of prosecutor's own admissions, and no interrogation of jurors should have been permitted, until after grant of motion.*

14. SAME—MOTION FOR MISTRIAL—COLLOQUY BETWEEN PROSECUTOR AND JURORS.

*Motion for mistrial in criminal case following colloquy between prosecutor and members of jury, where interrogation of jurors disclosed a variance between their story and the report of the conversation by the prosecutor,* held, *improperly denied on basis of the jurors' answers to trial judge's questions.*

15. SAME — NEW TRIAL — MOTION AFTER VERDICT — INFERENCE OF PREJUDICE.

*More than an inference of prejudice is required before a new trial must be granted in a criminal case where the issue of jury tampering is raised for the first time by motion for new trial after verdict, especially where counsel for defendant had knowledge of prejudicial incident prior to verdict.*

DISSENTING OPINION.

BLACK, J.

16. JURY—TAMPERING—CRIMINAL OR CIVIL CASES.

*The prohibition against tampering with jurors by officers of court is the same whether the case being tried is civil or criminal in nature.*

17. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—LIFE, LIBERTY, OR PROPERTY.

*Constitutional assurance of due process of law, originating with Magna Carta, was intended from the beginning to apply with equal force to the taking or attempted taking of life, liberty, or property.*

Appeal from Court of Appeals, Division 1; T. G. Kavanagh and Burns, JJ. and Quinn, P. J., affirming Recorder's Court; Schemanske (Frank G.), J. Submitted February 10, 1966. (Calendar No. 7, Docket No. 51,291.) Decided June 8, 1966.

1 Mich App 279, affirmed.

Michael Clayton Schram was convicted of assault with intent to rob while armed (CL 1948, § 750.89

[Stat Ann 1962 Rev § 28.284]).  Conviction affirmed
by Court of Appeals.  Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solictor General, *Samuel H. Olsen,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *James E. Lacey,* Assistant
Prosecuting Attorney, for the people.

*Michael C. Schram, in propria persona.*

SMITH, J.  Leave was granted from a decision
of the Court of Appeals which affirmed the trial
court conviction of defendant.  The issues in this
Court are two:  (1) Did the trial court commit re-
versible error when it consolidated for trial two
separate informations charging joint violators with
the same crime, where each was arrested, arraigned,
examined, and informed against at different times;
and (2) Did the trial court abuse its discretion in
denying a motion for mistrial when it learned that
an assistant prosecuting attorney had engaged in
a brief conversation with two jurors who asked on
what day the trial might be concluded?

As appears from the Court of Appeals opinion,
*People* v. *Schram,* 1 Mich App 279, a certain tavern
was robbed on September 26, 1958.  Defendant's
codefendant in trial proceedings, Mark Brock, was
implicated and complaint issued January 13, 1959.
He was arrested January 20th, examined on Jan-
uary 27th, and the information filed against him
February 19, 1959.  Both Brock and Schram were
charged with the crime of assault with intent to
rob while armed.

Defendant-appellant Schram, whose involvement
in the crime either was not known or fully under-
stood until after Brock had become implicated, had

a complaint issued against him January 27th, was arrested on a separate warrant January 30th, examined February 18th, and informed on separate information also filed February 19, 1959. On the day of trial, the assistant prosecutor moved to consolidate the cases for trial and over objections the motion was granted.

Objection was made by codefendant Brock's attorney and concurred in by defendant Schram's attorney. There was no claim by either defense attorney that prejudice would result from the consolidation. It was not claimed either that the prosecution's motion to consolidate came as a surprise, hence both counsel declined the trial court's offer of adjournment. The defendant's motion was based on the contention that the trial court had no authority, either under statutory or common law, to consolidate the cases "even though it may be claimed both defendants were involved in this same transaction." In ruling on the motion, the trial judge observed that the witnesses in each case were identical.

As to the other issue in the case, that of the conversation between the assistant prosecutor and two jurors about when the case might end, the following account of what took place is quoted from the record. It should be pointed out, for purposes of identification, that in the following colloquy Mr. Taylor was defendant Schram's attorney, Mr. Kent the assistant prosecuting attorney, and Mr. Montante the attorney for defendant Brock.

"*Mr. Taylor:* If it please the court, this is a little difficult to put. I am trying to be as much a gentleman as possible. There is no intimation or inference of maliciousness in this or any other aspect, but I must make this statement. I left the courtroom at noon. I believe two of the jurors were sitting out in the hallway having a conversation with Mr. Kent. I don't know what the conversation

was. I didn't overhear any part of it except for
two words, and one was the name mentioned by
Mr. Kent of the witness on the stand at the time
of adjournment and the other name was the name
of my client.

"I don't know what was said or any of the con-
text of the conversation. I will profess to knowing
nothing.

"I am merely pointing out this is improper pro-
cedure to engage in discussions—

"*The Court:* Were they two jurors sitting on this
case? Were they two jurors sitting on this case?"

*Hereinafter, the assistant prosecutor, Mr. Kent,
reported the conversation with the jurors as fol-
lows:*

"*Mr. Kent:* Of course, that calls for an explana-
tion. I do not disagree with Mr. Taylor except with
his use of the word 'improper'. I think, of course,
a court would be entitled to an explanation and
Mr. Taylor and Mr. Montante.

"After the adjournment, I walked out the side
door which leads into the hallway from the jury
room which is directly adjoining this courtroom.
As I walked out, I believe one of the jurors whose
name is Mr. Schultz and I don't recall the name of
the other juror—I think it was Juror No. 6—it is
No. 1, Maude Vickroy.

"Mr. Schultz said, as he pointed to me, as we
were all walking out with our hats and coats head-
ing down the hall, he said, 'It is all your fault that
we are being kept over.'

"I believe he said it in a joking manner. I said,
'Well, what do you mean?'

"He said, 'Well, you know that we will have to
probably stay over our term.'

"I said, 'Yes, I am very sorry. I know the judge
explained to you perhaps you might have to. He
explained it on the *voir dire* and asked if there were
any jurors whose terms would expire Friday,

whether or not they were willing to sit before the jury was empaneled.'

"He said, 'Do you think it will be over Monday or will it run into Tuesday?'

"I said, 'We, frankly, are through. We have Mr. Seevers here and we are going to ask a few more. questions. Then somebody would be testifying about Schram and then we will have arguments. I think that we will be able to complete the case by Monday.' . * * *

"That was the complete sum total of our conversation." (Emphasis supplied.)

*After Mr. Kent's report, the following colloquy and questioning of jurors took place:*

"*The Court:* Do you think the statements were prejudicial to your client?

"*Mr. Taylor:* I think any conversation, any discussion in the case including mentioning the facts what they are going to bring or prove—

"*The Court:* I want to interrogate the jurors.

"*Mr. Taylor:* It may be prejudicial.

"*The Court:* If a juror spoke to you, why didn't you walk away?

"I don't think the statement, to me, is anything that is prejudicial or detrimental, just a question about the time. There wasn't anything about the case.

"I want to question the jurors. I would rather it be done, as far as I am concerned.

"*Mr. Taylor:* I make a motion for a mistrial on what happened.

"*Mr. Kent:* You are placing the court in a position of making a mistrial.

"*The Court:* Well, you have made a motion for a mistrial. I will interrogate the jurors.

"*Mr. Taylor:* I make a motion for a mistrial.

"*Mr. Kent:* I think it is juror Nos. 1 and 5—I think you ought to interrogate just the two of them. .

*"The Court:* Wait a minute. Just step back and let me question the two jurors. I think it is juror No. 1 and No. 5.

"(Thereupon, the jurors were called into the chambers in the presence of counsel and defendants.)

*"The Court:* We understand both of you jurors had a conversation with Mr. Kent this noon?

*"Mr. Schultz:* Yes.

*"The Court:* And you are Mr. Schultz, is that your name?

*"Mr. Schultz:* Yes.

*"The Court:* Did you have a conversation with Mr. Kent whether or not you would have to stay over a day?

*"Mr. Schultz:* Yes.

*"The Court:* And was that the only question?

*"Mr. Schultz:* The time, sir.

*"The Court:* Was there anything that transpired between you and Mr. Kent which was either prejudicial to the prosecution or prejudicial to the defense?

*"Mr. Schultz: Nothing as to the case. We were remarking about the time, sir.*

*"The Court:* Worrying about the time?

*"Mr. Schultz:* Yes.

*"The Court: You feel that notwithstanding your conversation, you could give these defendants a fair and just and impartial trial?*

*"Mr. Schultz: Yes.*

*"The Court: Is it likewise true of you?*

*"Mrs. Vickroy: Yes.*

*"The Court:* Was there anything that transpired during your lunch that would sway you one way or the other?

*"Maude Vickroy:* No.

*"The Court:* Are you sure?

*"Maude Vickroy:* Yes.

*"The Court:* And you, ma'am—

*"Maude Vickroy:* There was nothing pertaining to the case.

"*The Court:* Nothing in the lawsuit, only as far as the time because your term was ending?

"*Maude Vickroy:* Right.

"*The Court:* You are positive anything that transpired between you and Mr. Kent will not affect the defense or the prosecution?

"*Maude Vickroy:* No.

"*Mr. Schultz:* No.

"*The Court:* Are you sure of that?

"*Mr. Schultz:* Yes.

"*Maude Vickroy:* Yes.

"*The Court:* All right, call the balance of the jury back. The motion is denied." (Emphasis supplied.)

First, we take up defendant's argument that the consolidation or joinder of his case with that of Brock was without legal authority. "If," he says, "it [the court] acted without any authority, then its actions are beyond the jurisdiction of the court and therefore void." Defendant cites that statute providing for separation of trials when defendants are jointly indicted: "When 2 or more defendants shall be jointly indicted for any criminal offense, they shall be tried separately or jointly, in the discretion of the court." CL 1948, § 768.5 (Stat Ann 1954 Rev § 28.1028). Defendant argues that because the cited statute contemplates only a situation where two or more defendants are *jointly* indicted, then joinder or consolidation where two or more defendants are separately indicted is forbidden, in the absence of express statutory authority.

Defendant's contention that joinder, under the circumstances, is a jurisdictional matter cannot be sustained. In *People* v. *Foster,* 261 Mich 247, where one of the questions was whether, after the statute cited above was amended to its present form, a previous order of separation could be set aside and defendants tried jointly, this Court held that such

was a statutory procedural right which the legislature could abrogate. We think the point should be well taken that under circumstances herein presented the matter is not one of jurisdiction but of procedure. There is nothing in the record to suggest that, as to place of crime, type of crime, age of parties, and other ingredients of jurisdiction required in such proceeding, the court did not have the power to try the cases. See *People* v. *Aguinaldo,* 3 Cal App 2d 254 (39 P2d 505), and *People* v. *Van Bibber,* 96 Cal App 2d 273 (215 P2d 106). The California courts have also held that such consolidations, not being jurisdictional, must be shown to prejudice substantial rights of a defendant before reversal can be obtained. *People* v. *Shepherd,* 14 Cal App 2d 513 (58 P2d 970); *People* v. *Johns,* 69 Cal App 2d 737 (160 P2d 102); and *People* v. *Hidalgo,* 195 Cal App 2d 843 (16 Cal Rptr 312).

A similar, though not exact, situation occurred in *Stuart* v. *People* (1879), 42 Mich 255, which was cited in the Court of Appeals decision. In *Stuart,* at page 258, the essential facts and relevant decisional point appear as follows:

"It appeared that the complaint and warrant under which the respondent was arrested and bound over charged him alone with the commission of the offense. Three others had been complained of, examined, and held for the same offense. The information filed charged the four jointly. Error is alleged that respondent having been arrested and held for trial on a separate complaint and warrant, he could not be charged jointly with others in the information.

"Where parties have been arrested upon separate complaints and warrants, *and held for trial for a joint offense,* we are of opinion that they may be jointly charged in the information, *and so tried,*

unless they claim separate trials under the statute."
(Emphasis supplied.)

The statute referred to in the *Stuart Case* pro-
vided that a person jointly charged with a felony
had an absolute right to a separate trial if he so
demanded it. The statute was amended many years
ago to its present form as quoted above and pro-
vides that the trial court has discretion as to whether
or not persons jointly indicted may be tried sepa-
rately or jointly. The point is that in the *Stuart
Case* the question of whether the defendant could
be charged with others in the information and tried
was clearly treated as a procedural matter. Similar
to the Court's later treatment of the matter is
*People* v. *Foster,* cited above.

In holding that the rights of the accused are fully
protected, this Court said in *Stuart* v. *People, supra,*
(pp 259, 260) that:

"He is not put upon trial for another or different
offense than the one upon which he was arrested
and examined, or waived examination. He is put
upon trial for the same offense, with others who,
in like manner, it has been determined, jointly par-
ticipated with him in the commission of the offense,
and if the evidence introduced on the trial, shows
they acted together, they have been deprived of no
legal right, and have therefore no just cause of
complaint."

We would reiterate that principle here.

We would add to this holding that, in the absence
of a showing of prejudice to substantial rights of
the accused, reversal is not indicated. This is the
import of the discussion in the *Stuart Case* quoted
immediately above, and is also consonant with
*People* v. *Shepherd, supra,* and other California
cases cited therewith. We need only point out,
therefore, that in the instant case there was no claim

of prejudice to substantial rights of the defendant, and we find none, hence, we conclude as to this point, the Court of Appeals decision was correct.

Secondly, we consider defendant's contention that the trial court abused its discretion in denying the motion for mistrial when it learned that an assistant prosecuting attorney had engaged in a brief conversation with two jurors who asked on what day the trial might be concluded. Defendant's major contention is that *People* v. *Kangas,* 366 Mich 201, is applicable in the instant factual situation. In *Kangas,* after the jury had retired to deliberate, the sheriff responded to a knock on the jury room door, there was a conversation, and the sheriff went to see the trial judge in private. The judge then (p 205), "instructed the sheriff to return to the jury room, where he talked with the jurors. Shortly thereafter, the judge called the jurors into open court and instructed the jury. In his instructions, the judge acknowledged that he had given them instructions through the sheriff and stated he wanted to clear up any points concerning instructions. He did not advise the jury to disregard the instructions given them by the sheriff. The jury left the courtroom for further deliberations and subsequently came back with a manslaughter verdict." On appeal, this Court held that the communication constituted grounds for a new trial, regardless of prejudice.

*Kangas* is clearly distinguishable from the instant case. In *Kangas,* the jury had retired for deliberation; the sheriff was present in the jury room after deliberation had begun; and the judge, through the sheriff, and out of the presence of the parties gave instructions to the jury. It is clear from the facts in the *Kangas Case* and the authorities cited therein that the basic error which this

Court sought to correct was the improper communication with the jury after it had retired for deliberations. The impropriety was in that the communication was an instruction made by the sheriff in the privacy of the jury room, off the record and outside the hearing of counsel. Where the communication was made in the sanctum itself, under such circumstances, the Court would not and did not stop to inquire if prejudice had resulted. For as this Court, in *Kangas* (p 207), quoted with special emphasis from *People* v. *Knapp,* 42 Mich 267 (36 Am Rep 438),

" '*The presence of a single other person in the room is an intrusion upon this privacy and confidence* [of the jury], *and tends to defeat the purpose for which they are sent out.*' "

Added to the special emphasis of the quote from the *Knapp Case* was the double emphasis given this feature of the case by the presence in *Kangas* of this language from *People* v. *Chambers,* 279 Mich 73, 80:

" 'It may be the acts or conduct of the officer had nothing to do with the deliberations of the jury or the conclusions which they arrived at. *He (the court officer) had no business in the jury room.* If it was necessary to furnish water to the jurors, it could have been furnished and he could have remained outside. * * * It is important that the officer be not guilty of any misconduct that could have influenced the jury, and that his conduct not furnish any ground for suspicion the jury was being tampered with or might be tampered with or was deliberating in his presence.' " (Emphasis supplied.)

*Kangas,* then presented a different aspect of this vexing problem.

What we have in this Schram case is not an instruction, the contents of which was never fully reported, delivered by a court officer to the jury in the jury room while the jury was deliberating (as in *Kangas*), but a brief conversation, fully reported, about *when* the proofs in the case might be concluded. Under such circumstances as herein presented we do not reverse unless there is a showing of prejudice.

This case is comparable to *People* v. *Nick,* 360 Mich 219, and cases cited therein. In the *Nick Case,* a prosecution for statutory rape, defendant moved for mistrial on the grounds that the jury was allowed to separate, presenting opportunities for contact with persons other than jurors, and the two women jurors were present in the corridor during recess when an unidentified woman made a remark concerning the guilt of the defendant. The Court held (p 227):

"In a case of this nature it has been repeatedly recognized by this Court that to justify the granting of a new trial 'error must appear affirmatively.' *People* v. *Whittemore,* 230 Mich 435. Prejudice must be shown, or facts clearly establishing the inference that it occurred from what was said or done. A mere possibility is not sufficient."

The Court further stated (pp 227, 228):

"In *People* v. *Pizzino,* 313 Mich 97, defendant Pizzino was convicted of second-degree murder. His motion for a new trial was denied, and he appealed. Among other issues raised was the claim, set forth in an affidavit filed in support of the motion for a new trial, that the deputy sheriff in charge of the jury had said in a voice loud enough to be heard by several of the jurors that if he 'were on the jury it would only take him 5 minutes to convict the defendants.' Commenting thereon it was

said by Chief Justice Starr, who wrote the unanimous opinion of the Court affirming the conviction, that (p 108):

" 'Defendant Pizzino claims that this remark by the officer constituted reversible error, but there is no claim or showing that it influenced any member of the jury who heard it. The remark was highly improper, but in the absence of a showing that defendant was prejudiced thereby, it did not constitute sufficient ground for granting a new trial.' "

We apply the rule set forth in the *Nick Case* that prejudice must be shown, or facts clearly establishing the inference that it occurred from what was said or done, before we will reverse. What does the record show? First, that the conversation was brief; that it occurred before deliberations; that it took place not covertly but in the public corridor; that it had nothing to do with the proofs in the case but was about when the case might come to an end; that the conversation was initiated by one of the jurors asking the assistant prosecutor when the case might end; that upon careful questioning of the jurors by the trial judge the elements of the conversation as reported by the assistant prosecutor were confirmed and the jurors required to answer to the question of whether or not they had been prejudiced by the brief though improper encounter.

There is one other element of the conversation about which there has been some question. This element has to do with that part of the conversation in which the assistant prosecutor explained to the juror when he would finish his part of the case and about when the whole case might be completed (all of which appears fully above). We do not believe that in the report of the assistant prosecutor's brief response there is any showing of prejudice or facts clearly establishing an inference of prej-

udice. In addition, what affirmatively appears are emphatic disclaimers of prejudice by the 2 jurors. Although we reassert that there was impropriety on the part of the assistant prosecutor in making what brief reply that he did, we, for the reasons given, find no cause for reversal.

The decision of the Court of Appeals is affirmed.

O'Hara and Adams, JJ., concurred with Smith, J.

Kelly, J. I am in complete agreement with Justice Smith's opinion but disagree with statements in the dissenting opinion that:

(1) Accuse the trial judge of improper conduct in questioning the jury, and

(2) "Three conclusions are possible. 1. The jurors did not understand the trial judge's inquiry. 2. The jurors were lying about what transpired between them and the prosecutor. 3. The prosecutor was lying. Whichever conclusion one chooses, a mistrial should have been granted."

For a long time prior to our 1965 opinion in *Bunda* v. *Hardwick*, 376 Mich 640, and the 1966 case of *DeCorte* v. *New York Central Railroad Co.*, 377 Mich 317, this Court has been on guard against prejudice caused by incidents occurring during trial and has reversed convictions upon a showing of prejudice. See cases listed in *People* v. *Schram*, 1 Mich App 279, 285.

In 1919[1] this Court stated: " 'Much must be left to the sound sense and good judgment of the trial judge in such a case.' " And in 1960[2] we re-emphasized the important role of the trial court by stating:

"The judge presiding throughout the trial and observing the occurrences in the courtroom and

[1] *People* v. *Levey*, 206 Mich 129, 131.
[2] *People* v. *Nick*, 360 Mich 219, 224.

elsewhere was in a better position to determine the probability of any conduct on the part of jurors or others prejudicial to the rights of the defendant than is this Court. Generally speaking, the granting or denying of a new trial in any case is a matter within the discretion of the trial court, and the action taken in that respect should not be disturbed on appeal unless it appears that such discretion has been improperly exercised."

Nothing in this record calls for us to doubt the ability or integrity of the trial judge, or the intelligence or integrity of the jury, or to conclude that the prosecutor lied to the court.

I agree with the concluding sentences in the unanimous opinion of the appellate court that:

"There is nothing in the record to show an abuse of discretion in denying the motion for a mistrial.

"There being no reversible error the decision is affirmed."

DETHMERS, J., concurred with KELLY, J.

SOURIS, J. (*dissenting*).

## I.

"If a juror spoke to you, why didn't you walk away?" This comment, made by the trial judge upon being informed of the conduct of the prosecutor in this case of *Schram*, sums up the standard required of an officer of the court in his dealings with a jury. In *Bunda* v. *Hardwick* (1965), 376 Mich 640, 668, this Court recently approved the following language:

"A court officer should not converse with the jurors at any time, except as necessary to direct them where to go and when. If they ask him any questions in any way related to the case on trial, he

should tell them that he is not permitted to make any comment upon the case or its conduct, but that he will take to the judge any written questions they may have."

Three months later, in *DeCorte* v. *New York C. R. Co.* (1966), 377 Mich 317, the Court found reversible error in the conduct of a court officer who, although not in charge of the jury in that case, had associated with the jurors during the course of the trial and had, on occasion, driven plaintiff to court. It is significant that the trial judge in *DeCorte* did not question the jurors about their associations with the court officer and that this Court, through Mr. Justice BLACK's opinion, indicated that such questioning during the trial would have been improper. 377 Mich 317, 351. Merely the association of the jurors with a court officer predisposed to plaintiff's case was held *per se* a denial to defendant of due process of law.

These, then, are the strictures we have laid down so very recently in civil cases with regard to court officers who are not attorneys. How much stricter should be the prohibitions against fraternization between *attorneys* and jurors *in criminal cases*—attorneys who inevitably are identified with the party whose cause they advocate! If it is presumed that a jury might be infected with prejudice by association with a court officer who is friendly with a party, how much stronger should be the presumption that a jury will be so infected by association with an attorney for one of the parties!

## II.

The incident which occurred in this case by no stretch of the imagination can be termed innocuous. As is divulged in the prosecutor's statements quoted in the opinion of Mr. Justice SMITH, one of the

jurors in the presence of another juror indicated to the prosecutor displeasure at being kept beyond the jurors' regular term and attributed blame therefor to the prosecutor. The prosecutor sympathized with the jurors' plight, exculpated himself by saying, "We, frankly, are through", and placed the onus of keeping the jurors over their regular term upon defendant.

One wonders what was the attitude of these restive jurors towards, and with what attention they listened to, the testimony subsequently offered on behalf of the defendant who was the cause, as they were assured by the commiserating prosecutor, of their prolonged detention. Can anyone doubt that, consciously or not, they took a somewhat jaundiced view of defendant's presentation?

## III.

As indicated, on the authority of *DeCorte,* I do not believe the trial judge should have interrogated the jurors for the purpose of determining whether a mistrial should have been granted; rather, he should have granted the mistrial on the basis of the prosecutor's own candid admissions. But even the trial judge's examination of the jurors, as quoted in Justice Smith's opinion, does not establish a convincing basis for a finding that they were untainted by their conversation with the prosecutor. Note that the trial judge never asked the jurors to narrate their version of the conversation, but rather prompted their predominantly monosyllabic replies by leading questions. Nor did he question the jurors separately to test the consistency of their versions of the event.

Furthermore, the answers which the jurors gave to the judge's questions are at variance with the prosecutor's statement to the judge. Thus, the ju-

rors answered, when asked whether anything preju-
dicial transpired, that there was "Nothing as to
the case. We were remarking about the time, sir.
* * * There was nothing pertaining to the case."
Compare this with only a portion of the prosecutor's
version: "I said 'We, frankly, are through. We
have Mr. Seevers here and we are going to ask a
few more questions. Then somebody would be testi-
fying about Schram and then we will have argu-
ments. I think that we will be able to complete
the case by Monday.' "

From the foregoing dichotomous statements, three
conclusions are possible. 1. The jurors did not
understand the trial judge's inquiry. 2. The jurors
were lying about what transpired between them and
the prosecutor. 3. The prosecutor was lying.
Whichever conclusion one chooses, a mistrial should
have been granted even on the basis of the jurors'
answers to the trial judge's questions, assuming
the propriety of questioning the jurors during the
course of the trial. As indicated above, however, I
believe a mistrial should have been granted on the
basis of the prosecutor's own description of what
transpired.

## IV.

*People* v. *Nick* (1960), 360 Mich 219, cited by
Justice SMITH, and *People* v. *Pizzino* (1945), 313
Mich 97, relied upon in the *Nick Case,* do not per-
suade me that we should affirm. Disregarding the
fact that the juries allegedly were prejudiced in
those cases by someone other than the prosecutor
himself, in both *Nick* and *Pizzino* the issue of juror
prejudice was first raised by motion for new trial
after a verdict had been reached. Indeed, in the
*Pizzino Case* 14 years elapsed between the adverse
jury verdict and this Court's opinion. In such

cases, it may well be that something stronger than an "inference" of prejudice is required before a new trial must be granted, especially when, as noted in Mr. Justice Black's opinion in *Nick,* counsel for defendant had knowledge of the allegedly prejudicial incident prior to the jury's returning a verdict. Here, however, motion for mistrial was made as soon as the misconduct was discovered and before the jury had retired. It should have been granted.

The conviction should be reversed for new trial.

T. M. Kavanagh, C. J., concurred with Souris, J.

Black, J. (*dissenting*). I agree fully with Justice Souris except in this:

Our "strictures" against the fact or even the appearance of tampering with jurors by officers of court—all officers of court that is—are the same whether the case being tried is civil or criminal in nature. I mean to keep on repeating that the constitutional assurance of due process of law, originating as it did with the Magna Carta, was intended from the beginning to apply with equal force to the taking or attempted taking of life, liberty, or property.

This opinion of separate concurrence is recorded only to guard the writer's signature from future allegation that *People* v. *Schram* is precedent for the proposition that an officer of court may safely jury-tamper or appear to jury-tamper to some greater degree in a civil case than in a criminal case. *People* v. *Schram* is not with my vote to become authority for saying that the constitutional warrant of due process isn't quite as strong when one's property distinguished from his personal liberty is threatened. Deprivation of the one can hurt as much or more than deprivation of the other.