PEOPLE v RICHARDSON

1. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—PREMEDITATION— DELIBERATION—COMMON LAW.

In order to sustain a conviction for first-degree murder, evidence must be adduced to prove the existence of the statutory elements of premeditation and deliberation in addition to the elements of common-law murder.

2. CRIMINAL LAW—PREMEDITATION—DELIBERATION.

To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.

3. CRIMINAL LAW—PREMEDITATION—DELIBERATION—HOT BLOOD— MINIMUM TIME—SECOND LOOK.

Premeditation and deliberation characterize a thought process undisturbed by hot blood; the minimum time necessary to exercise this process is incapable of exact determination, but the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look".

4. HOMICIDE—PREMEDITATION—DELIBERATION—FACTORS.

The factors constituting premeditation and deliberation include (1) inferences from circumstances surrounding the killing, (2) the opportunity to subject the initial response to a second look or reflection, and (3) use of the weapon.

5. APPEAL AND ERROR—COURT OF APPEALS—CRIMINAL LAW—JURY VERDICTS—INSUFFICIENT EVIDENCE—REASONABLE DOUBT.

The Court of Appeals must determine, in reviewing a jury verdict in a criminal trial against a charge of insufficient evidence,

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 40 Am Jur 2d, Homicide § 439.
[2–4] 40 Am Jur 2d, Homicide § 52.
[5] 30 Am Jur 2d, Evidence §§ 1170–1173.
   40 Am Jur 2d, Homicide § 454.
[7, 8] 75 Am Jur 2d, Trial §§ 876–882.
[9] 76 Am Jur 2d, Trial § 1043.
[10] 5 Am Jur 2d, Appeal and Error § 736.

whether there was ample evidence on each and every element of the charge to warrant a verdict of guilty beyond a reasonable doubt.

6. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—PREMEDITATION—DELIBERATION—TESTIMONY—APPEAL AND ERROR.

There was sufficient evidence of the elements of premeditation and deliberation to sustain a defendant's conviction for first-degree murder where the testimony indicated that there was sufficient time to premeditate and deliberate, and where the evidence presented suggests that the defendant deliberately and with reflection shot the decedent.

7. CRIMINAL LAW—JURY INSTRUCTIONS—JUDGE'S DUTY—LESSER INCLUDED OFFENSES—EVIDENCE—NECESSARILY INCLUDED OFFENSES—COGNATE LESSER OFFENSES.

A trial judge's duty to instruct on lesser included offenses is determined by the evidence; (1) if the evidence presented would support a conviction of a lesser included offense the refusal to give a requested instruction is reversible error, (2) if the lesser offense is necessarily included within the greater the evidence will always support the lesser if it supports the greater, and (3) in the area of "cognate" lesser offenses, the evidence adduced at the trial must be examined to determine whether that evidence would support a conviction of the lesser offense.

8. HOMICIDE—JURY INSTRUCTIONS—APPEAL AND ERROR—FIRST-DEGREE MURDER—LESSER OFFENSES—REVERSIBLE ERROR.

Instructions on the lesser offenses of involuntary manslaughter or reckless use of a firearm should be given in a jury trial for first-degree murder where the evidence adduced in the case supports a finding of involuntary manslaughter or the reckless use of a firearm; the failure to give such instructions is not reversible error where the jury convicted the defendant of first-degree murder and refused to convict on the lesser offenses of second-degree murder or voluntary manslaughter, for which instructions had been provided, thereby indicating no reasonable doubt as to the defendant's guilt of the charged offense.

9. TRIAL—JUDGE'S DISCRETION—TESTIMONY—READING BACK TESTIMONY—ABUSE OF DISCRETION.

The reading back of testimony upon a jury's request and the extent of such reading back are matters confided to the sound discretion of the trial judge; to find an abuse of this discretion the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of

will, not the exercise of judgment but defiance thereof, and not the exercise of reason but rather of passion or bias.

10. APPEAL AND ERROR—EX PARTE AFFIDAVITS—RECORD ON APPEAL—
    GENERAL RULE—EXCEPTIONS—FUNDAMENTAL INJUSTICE—PREJ-
    UDICE.

> *Ex parte* affidavits, filed for the first time in appellate court briefs, may not serve to enlarge the record on appeal; an exception to this general rule is recognized where a "fundamental injustice" would result from the application of this rule; however, to demonstrate such fundamental injustice prejudice must be shown from what was said or done.

Appeal from Recorder's Court of Detroit, John O'Brien, J. Submitted April 20, 1977, at Detroit. (Docket No. 25340.) Decided August 22, 1977. Leave to appeal applied for.

Jesse J. Richardson, Jr., was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training and Appeals, and *Robert H. Butler,* Assistant Prosecuting Attorney, for the people.

*Barbara R. Levine,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and D. F. WALSH and J. N. O'BRIEN,* JJ.

V. J. BRENNAN, P. J. Defendant Jesse James Richardson, Jr., was charged with first-degree murder contrary to MCLA 750.316; MSA 28.548. On June 13, 1975, defendant was convicted by a jury in Recorder's Court for the City of Detroit. Defendant was sentenced to life imprisonment on July 1, 1975. Claim of appeal was filed on August 15,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1975. Defendant appeals as a matter of right under GCR 1963, 806.1.

On April 23, 1975, defendant was at the residence of Charles Johnson when an altercation arose between defendant and Marshall Cook, the brother of the decedent, Paul Cook. Marshall Cook testified that he beat defendant about the head with a brick in order to stop defendant from fighting another man. Defendant was cut badly and was bleeding profusely from two head wounds which ultimately required 22 stitches.

Charles Johnson testified that he asked defendant if he could take him to a clinic for treatment. Johnson states he took defendant to the clinic but the defendant refused to stay long enough for medical treatment. Johnson then took defendant home. Johnson states that when they arrived at defendant's home defendant got a box of shells and two rifles. Johnson observed defendant loading both rifles and getting a knife from a drawer. Linda Steen, defendant's common-law wife, then called defendant's father to request his assistance in taking defendant to the hospital. According to Johnson, defendant got on the phone and said to his father: "I'm going to kill this mother fucker". At this point Johnson left and told Marshall Cook to get off the street.

At approximately 5:30 p.m., Miss Steen, her ten-year-old daughter Sonja, defendant and his father left for Deaconess Hospital. Defendant's father was driving. Defendant gave some amount of direction. Defendant had placed a rifle under the front seat of the car before leaving the house. His wife and father described him as being "aggitated" and uncommunicative.

At approximately 6 p.m., as the car rounded a corner, defendant spotted Paul Cook, brother of his

assailant Marshall Cook, and asked his father to stop the car. Paul was walking down the street, drinking a can of beer, in the company of one Glenn Spencer.

Glenn Spencer, a good friend of the Cook family and a stranger to defendant, testified that defendant got out of the car and said to Paul, "your brother just busted my mother fucking head". Defendant then reached in the car for the rifle. Paul said he knew nothing about the beating. Defendant cocked the rifle and ejected an empty shell. Paul again said he had nothing to do with the beating. Defendant bent down to pick up the empty shell. As he arose he pushed Paul, who had approached him with his arms extended. Defendant then rapidly shot him twice. According to Spencer, Paul was facing the defendant when the first shot was fired. After the shot was fired, Paul fell backwards and was lying partially on his side when the second shot was fired. At no time did Paul turn his back on defendant. Spencer claimed to have seen the entire incident, although he began moving away as soon as he saw the rifle. By the time he heard the first shot he was two or three houses down the street. He said he never turned his back on the two men, but watched them as he trotted backwards down the street. He said the whole incident occurred in half a minute or less. Further, just before the shots were fired Spencer heard someone in the car say, "Jesse don't do that".

After the shooting, defendant got back in the car and left the scene. He proceeded to the hospital where he remained for several hours while his head wounds were treated. He then returned home. Defendant was arrested while cleaning up the dried blood from his own injuries.

Defendant testified in his own behalf. His theory was that the shooting had been accidental. He testified that he had stopped to speak to Paul Cook because, although he and Marshall had never gotten along well, he and Paul were good friends. He wanted to tell Paul that he didn't intend to press charges, but that he wanted to talk to Marshall after they had "gotten themselves together" about why Marshall would want to "mess him up like that". Defendant said that when he exited the car he and Paul got into an argument because Paul laughed about the head injuries as if they were a "big joke". The argument escalated into cursing and pushing. When Paul shoved him back towards the car the defendant pulled the gun out, butt end first. As he swung the rifle around Paul grabbed the barrel. The two men wrestled and the gun went off. Paul fell to the ground still holding onto the gun. Defendant pulled the gun away, got back in the car and left. He said he did not stop to check on Paul's injuries because he did not believe Paul had been shot. He also said that Glenn Spencer "took off" when the gun first appeared.

At the close of proofs, defense counsel moved for a directed verdict on the ground that the evidence was insufficient to show premeditation. The trial court denied the motion.

Prior to the trial court's instructions to the jury, defense counsel requested the court to instruct them on only first-degree murder. The trial court declined to require an all-or-nothing verdict. Counsel then requested instructions on the lesser included offenses of manslaughter and reckless discharge of a firearm on the ground that the elements of those offenses were consistent with the proofs in the case. The court declined to instruct on reckless use because the information had not included such a count.

However, the court did instruct the jury on the offenses of first-degree murder, second-degree murder and voluntary manslaughter. At the conclusion of its instructions, the court asked defense counsel whether they had any objections. Defense counsel objected to the court's failure to charge the jury regarding accidental death and the court suggested defense counsel write an appropriate additional instruction on this defense theory. With the jury waiting to begin deliberation, defense counsel wrote an instruction. The court then recalled the jury and charged them thus:

"Ladies and Gentlemen, I'm going to reiterate, you should consider all the various possible verdicts, consider them at the same time. In considering the elements of the various crimes as I've described them to you in your deliberations. You may find the defendant guilty of murder in the first degree, or you may find him guilty of murder in the second degree, or you may find him guilty of manslaughter, or you may find that the resulting death was the result of an accidental discharge of the gun without any intent to kill or to inflict any serious injury; then, of course, you must then find the defendant not guilty."

Shortly afterward, the jury requested additional clarification as to whether the bullet entered the decedent from the front or back. Consequently, those portions of the medical testimony of Dr. Satish Shah regarding the autopsy were reread to the jury. The record does not indicate which portion was actually read. The court then turned to the foreman and inquired:

"Your deliberations was based on the point of entry and is it cleared up well enough? Is that what you said?
"JUROR MAYS: That's correct.

"THE COURT: All right. You may resume your deliberations."

The jury resumed deliberations and defense counsel objected that material points had been omitted when the testimony was read back and expressed the fear that the jury had been misled. He noted that the testimony about the fragmentation of one bullet and resulting multiple points of entry were clarified on cross-examination. He insisted that the portion reread to the jury had been taken out of context. The judge replied that the testimony read had satisfied the jury and that was enough. At 3:36 p.m. on June 13, 1975, the jury returned a verdict of guilty of first-degree murder. Defense counsel reacted with the following motion:

"Your Honor, can I move for a directed verdict of not —at this time I don't believe the facts would sustain a verdict of first degree murder and I move for a mistrial based on the fact that the testimony as read back to the jury indicated he was shot in the back and the fact of the fragmentation of the bullet was not brought out."

The motion was denied by the court.

On appeal, defendant brings several allegations of error. We will discuss each one in order.

Defendant first argues the trial court committed reversible error by denying defendant's motion for a directed verdict because insufficient evidence existed on the elements of premeditation and deliberation to warrant a conviction of first-degree murder.

In order to sustain a conviction for first-degree murder, evidence must be adduced to prove the existence of the statutory elements of premeditation and deliberation in addition to the elements of common-law murder. *People v Vail,* 393 Mich

460, 468–469; 227 NW2d 535 (1975), *People v Morrin,* 31 Mich App 301, 328–330; 187 NW2d 434 (1971).

In *Morrin,* we stated with regard to premeditation and deliberation:

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." *People v Morrin,* 31 Mich App 329–330; 187 NW2d 434 (1971).

We also find a clear summary of the factors constituting premeditation and deliberation in *People v Meier,* 47 Mich App 179, 191–192; 209 NW2d 311 (1973). These factors include (1) inferences from circumstances surrounding the killing, (2) the opportunity to subject the initial response to a second look or reflection and (3) use of the weapon. See *People v Moss,* 70 Mich App 18; 245 NW2d 389 (1976), *People v Hoffmeister,* 394 Mich 155, 158–161; 229 NW2d 305 (1975).

In reviewing a jury verdict against a charge of insufficient evidence, we must determine whether there was ample evidence, on each and every element of the charge, to warrant a verdict of guilt beyond a reasonable doubt. *People v Palmer,* 392 Mich 370, 375–376; 220 NW2d 393 (1974).

By applying these principles, we find ample evidence to sustain defendant's conviction. Witness Spencer testified that he was walking with the deceased when the defendant pulled up and got

out of the car. Defendant stated to the decedent, "your brother just busted my mother fucking head". Defendant then reached in the car for the rifle and ejected an empty shell. Paul again said he had nothing to do with the beating. Defendant bent down to pick up the empty shell and as he rose he pushed Paul, who had approached him with arms extended. Defendant then rapidly shot Paul Cook twice.

Charles Johnson testified that prior to leaving defendant's home, defendant loaded the rifle. Further, defendant's father testified that defendant put the rifle in the car, directed the father to drive and when the defendant observed the deceased, he directed the father to stop the car.

Defendant testified that the deceased had "set him up to be beaten". Defendant's father corroborated this statement.

On the basis of this testimony, we feel there was sufficient time to premeditate and deliberate and so satisfy a charge of first-degree murder. While no evidence appeared to suggest a highly structured plan to kill the decedent, evidence was presented which would suggest that defendant deliberately and with reflection shot decedent. Thus, we find sufficient evidence of the elements of premeditation and deliberation to sustain the court's submission of the matter and the jury's finding on a charge of first-degree murder.

Defendant claims next that the trial court erred reversibly by failing to instruct on certain lesser included offenses of first-degree murder where a request for those instructions was made by defense counsel.

Defendant's counsel requested, before the jury was instructed, that the trial court instruct them on "manslaughter and reckless use of a firearm;

death ensuing". The trial court refused to charge the jury on reckless use and instructed the jury on first-degree murder, second-degree murder and voluntary manslaughter.

The general scope of necessary instruction on lesser included offenses has been defined by the Michigan Supreme Court. *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). See also *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975). The Court stated in *Ora Jones:*

"The duty of the trial judge to instruct on lesser included offenses is determined by the evidence. *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971). If evidence has been presented which would support a conviction of a lesser included offense, refusal to give a requested instruction is reversible error. *Id* at 36. *People v Hamilton,* 76 Mich 212; 42 NW 1131 (1889).

"If the lesser offense is one that is necessarily included within the greater, the evidence will always support the lesser if it supports the greater.

"In the area of 'cognate' lesser offenses, the evidence in each case adduced at the particular trial must be examined to determine whether that evidence would support a conviction of the lesser offense." *People v Ora Jones, supra,* at 390.

Evidence was adduced in this case which would have supported a finding of involuntary manslaughter or reckless use of a firearm. *People v Chamblis, supra,* at 423. Therefore, instructions on these lesser offenses should have been given. However, given that the jury refused to convict on the lesser offenses of second-degree murder or voluntary manslaughter, for which instructions were provided, we do not believe the error, under *Chamblis,* is reversible. *People v Herbert Ross,* 73 Mich App 588; 252 NW2d 526 (1977).

In *Ross,* on finding no reversible error, we made the following comment:

"If the jury had doubts about defendant's guilt of the charged offense but believed him to be guilty of some wrongdoing they could have found him guilty of one of the lesser offenses. They did not do so. We must conclude, therefore, that the jury had no reasonable doubt as to the defendant's guilt of the charged offense." 73 Mich App at 592.

We see no reason to view the present case differently, and so decline to reverse here.

Defendant alleges thirdly that the trial court erred in failing to adequately instruct the jury on his theory of the case.

We find no merit in this claim. *People v Ora Jones, supra,* at 394. Unlike the trial court in *Ora Jones,* the trial court here specifically did instruct the jury that defendant should be found not guilty if the shooting was determined accidental. No basis for reversal exists.

Defendant next argues that the trial court abused its discretion by improperly reading a portion of the trial testimony back to the jury when requested.

At one point early in its deliberations, the jury returned to ask the court to read again certain testimony regarding the entry of the bullet wounds into the victim's body. The trial court directed that a portion of the medical testimony be read to the jury, whereupon the reporter proceeded to do so.

The court then inquired of the jury whether the testimony read was sufficient and the jury indicated satisfaction. However, defense counsel requested that more of the medical testimony be

read to the jury. The court refused counsel's request.

Michigan law concerning whether record testimony shall be read again to a jury is clear and settled:

" 'The general rule, well established, is that when a jury requests that testimony be read back to it both the reading and extent of reading is a matter confided to the sound discretion of the trial judge. See *Klein v Wagenheim,* 379 Mich 558, 561; 153 NW2d 663 (1967); *People v Walker,* 371 Mich 599, 610; 124 NW2d 761 (1963); *Rumptz v Leahey,* 26 Mich App 438, 443; 182 NW2d 614 (1970).

" 'In *Klein v Wagenheim, supra,* p 561, the Michigan Supreme Court considered and rejected the argument that it is not proper to read any testimony, unless all the testimony is read, because otherwise there would be a tendency to emphasize what is read. The Court declared: "This is not now and never has been the law in Michigan".' *People v Turner,* 37 Mich App 162, 174; 194 NW2d 496 (1971)." (Emphasis added.) *People v Howe,* 392 Mich 670, 675–676; 221 NW2d 350 (1974). Accord, *People v Smith,* 65 Mich App 95; 237 NW2d 199 (1975).

In order for us to find an abuse of discretion, the "result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias". *People v Erb,* 48 Mich App 622, 625–626; 211 NW2d 51 (1973).

In the present case, the jury was attempting to ascertain the bullet's point of entry "whether it was from the front or the back". The court ordered this testimony read back. The jury then indicated their satisfaction. We find no abuse when the record plainly demonstrates the jury's concern

with the *point of entry* alone. Defense's insistence on reading testimony relating to *how* the point of entry occurred is irrelevant to the jury's own request. No abuse of discretion appears.

Defendant contends finally that alleged improper communications between third parties and jurors were prejudicial and require reversal.

Subsequent to trial, four individuals, including one juror, signed sworn affidavits indicating that Marshall Cook approached jurors and spoke to them in the courtroom hallway. While two affiants, Edward Richardson and Beatrice Carter, were unable to overhear the conversation, two others, Valerie Phillips and Arthur Martin, clearly recalled that Cook stated defendant had killed his brother and the jury should convict him. Other comments were allegedly made in the presence of the jury as well.

*Ex parte* affidavits, filed for the first time in appellate court briefs, may not serve to enlarge the record on appeal. *People v Nelson Johnson,* 58 Mich App 473, 478; 228 NW2d 429 (1975), *People v Taylor,* 383 Mich 338, 362; 175 NW2d 715 (1970). We recognize an exception where to apply the general rule would result in a "fundamental injustice", *People v Moreland,* 12 Mich App 483, 487; 163 NW2d 257 (1968). However, demonstrating such fundamental injustice requires prejudice be shown from what was said or done. *People v Schram,* 378 Mich 145, 160; 142 NW2d 662 (1966), *People v Nick,* 360 Mich 219, 226–227; 103 NW2d 435 (1960).

In the present case, the affidavits show no prejudice. Beatrice Carter and Edward Richardson's affidavits show nothing. Valerie Phillips and Arthur Martin's affidavits show statements were made by third parties but evidence no prejudice.

Further, the affidavit of the juror, Valerie Phillips, states nowhere that the jury was prejudiced by what was said or heard. Consequently, we believe defendant's allegation is conjecture at best and not a proper basis to reverse the jury's verdict.

Therefore, having reviewed all claims of error and finding none persuasive, we sustain the defendant's conviction.

Affirmed.