*In re* PETITION OF CITY OF DETROIT TO CONDEMN LANDS
FOR SEWAGE DISPOSAL PLANT.

APPEAL OF MARION.

1. EMINENT DOMAIN—JURY OF 14—STATUTES—ACQUIESCENCE.
 Action of judge impaneling 14 jurors instead of 12 with the
 order that but 12 of them should participate in deliberations
 after the hearing *held*, justified irrespective of statute, where
 condemnation proceedings were to be protracted and expensive
 and all parties interested, either by consent in open court, or
 by silence, acquiesced in such procedure (1 Comp. Laws 1929,
 § 3763 *et seq.*; Act No. 93. Pub. Acts 1931).

2. SAME—SEWAGE DISPOSAL PLANT—EVIDENCE—FINDINGS OF JURY.
 Under record in proceedings to condemn land of appellants and
 others for use for sewage disposal plant and public utility
 conduit and sewer tunnels, where convincing testimony is
 ample to justify finding necessity for proposed improvement,
 necessity for taking private property, including some belong-
 ing to appellants, and award to appellants was reasonable,
 Supreme Court will not substitute its opinion for that of the
 jury who heard all of the testimony and viewed the premises.

3. SAME—HEARING—CONDUCT OF COUNSEL.
 Conduct of appellee's counsel at hearing in proceedings to con-
 demn land for use as sewage disposal plant and for public
 utilities conduit and sewer tunnels *held*, not unprofessional,
 unethical or prejudicial to rights of appellants.

4. SAME—JURORS AS ELECTION INSPECTORS—MISTRIAL—STATUTES.
 Fact that 3 of 14 jurors, impaneled in condemnation proceedings
 by city for purpose of acquiring lands for sewage disposal
 plant and public utility conduit and sewer tunnels, served as
 election inspectors at primary election which took place during
 pendency of protracted proceedings and received usual com-
 pensation therefor *held*, not to disqualify them as jurors nor
 to justify declaration of mistrial, where jurors were not shown
 to have been selected as election inspectors prior to *voir dire*,
 or not to have answered questions truthfully on *voir dire*,
 served as such inspectors without objection on part of appel-
 lant until after several days' subsequent service as jurors,
 since as such election officials they were not subject to dis-

charge by any city official, relation of master and servant did not exist between them and city and duties both as jurors and election inspectors were prescribed by law (1 Comp. Laws 1929, § 3763 *et seq.*).

5. ELECTIONS—INSPECTORS.

An inspector of elections is in no sense an employee of a city, township or county.

6. JURY—QUESTIONS—PEREMPTORY CHALLENGES.

A litigant is entitled to make certain inquiries of jurors to ascertain the state of their minds and to develop facts which would justify or warrant a peremptory challenge and is entitled to true answers from prospective jurors.

Appeal from Wayne; Moynihan (Joseph A.) J. Submitted June 24, 1937. (Docket No. 136, Calendar No. 39,629.)  Decided June 29, 1937.

Petition by City of Detroit, a municipal corporation, to condemn certain land for a sewage disposal plant.  From order confirming the verdict, Adolph N. Marion and wife appeal.  Affirmed.

*John Atkinson,* Assistant Corporation Counsel (*Raymond J. Kelly,* Corporation Counsel, of counsel), for plaintiff.

*Ira F. Morgan,* for defendants Marion.

CHANDLER, J.  On May 4, 1936, the city of Detroit filed a petition in the circuit court for the county of Wayne pursuant to the provisions of Act No 149, Pub. Acts 1911, as amended by Act No. 37, Pub. Acts 1925 (1 Comp. Laws 1929, § 3763 *et seq.*), "to acquire the right to take property for the use or benefit of the public without the consent of the owners for a public improvement or for the purpose of its incorporation or for the public purposes within the scope of its powers (department of public works site, sewage disposal and for municipal public utility conduits and tunnels for sewer purposes)."

Appellants were the owners of a certain parcel of unoccupied land, consisting of 57 acres bounded on the easterly end by Jefferson avenue, on its southerly side by the River Rouge, and on its westerly and northerly sides by the main line of the Michigan Central Railroad and the Delta spur servicing Zug island and nearby industries, which, together with other lands, was desired by the city for the proposed improvement. A jury impaneled for the purpose of determining the necessity for the taking of said property and for determining the compensation to be paid therefor, found that the improvement was a public necessity and that it was necessary for this purpose to take of the land owned by appellants approximately 47 acres and awarded appellants a substantial amount as compensation for such taking. The record discloses a compliance with the constitutional and statutory requirements for bringing the parties before the court for the determination of the necessity for such proposed improvement, the condemnation of private property necessary therefor, and the compensation to be awarded the owners of the property to be taken for such proposed improvement.

On June 23, 1936, appellants, by their attorney, filed notice of their appearance in said proceedings. On July 3, 1936, an order issued to summon freeholders to determine the necessity for the improvement and the taking of appellants' and other private property therefor, and the compensation to be awarded. On July 17th, a jury was struck, venire issued returnable August 4th, on which date a jury of 14 was impaneled, who, after being duly sworn, proceeded to view the premises and later proceeded to a trial of the matters involved in these proceedings. The calendar entries and the record reveal that appellants were represented by their attorney

in these preliminary proceedings. It is important
to note at this time that instead of a jury of 12 being
impaneled, as is contended by appellants should
have been done, that a jury of 14 was impaneled, and
further that the impaneling of that number was
without opposition on the part of any of the inter-
ested parties, including appellants, and that 14 were
impaneled in view of the fact that it was at that time
contemplated that the proceedings to be had might
occupy a period of several months with the possi-
bility that during such hearing one or more of the
jurors might be disqualified or eliminated by disease
or death from being able to deliberate at the conclu-
sion of the hearing upon the issues involved. As a
matter of fact the taking of testimony and other
matters involved, including the deliberations of the
jury continued from August 5 to December 24, 1936.
It was intended that 14 qualified jurors should view
the premises, hear the testimony, and that at the
conclusion of the hearing two of said jurors should
be withdrawn as provided by Act No. 93, Pub. Acts
1931, and that 12 of the jurors should deliberate for
the purpose of determining the necessity of the pro-
posed improvement, the necessity for the taking of
private property therefor and the amount of the
award which should be made to the property owners
as compensation for the property necessarily taken
to bring about the completion of the improvement
contemplated by the initiation of the condemnation
proceedings. Counsel for appellants admitted be-
fore this court that the 14 jurors impaneled and
sworn were freeholders of the city of Detroit, that at
the time of the impaneling and swearing of 14 jurors
for said hearing by order of the court, with the fur-
ther order that but 12 of said jurors should partici-
pate in the deliberations, neither appellants nor any

of the other parties whose property was proposed to be taken interposed any objection whatsoever, although the court stated at the time that he would impanel 14 jurors, his reason being because of prior experience in which one or more jurors had, during protracted hearings, become disqualified or eliminated by disease or death, resulting in a mistrial and requiring the impaneling of another jury at large expense and great inconvenience to all parties concerned.

We, therefore, hold that the action of Judge Moynihan in the impaneling of 14 jurors instead of 12 under these circumstances was not only justified by Act No. 93, Pub. Acts 1931, but was commendable regardless of said statutory provision in view of the fact that it was well known that the proceedings then pending would be both protracted and expensive, and that all parties interested, either by consent in open court, or by silence, acquiesced in this procedure.

At the conclusion of the hearing of testimony on October 20th the names of the two jurors were withdrawn by lot, leaving 12 qualified jurors to deliberate upon the testimony taken, determine the necessity of the proposed improvement, the necessity of taking appellants' and other private property therefor, and the compensation to be awarded for the taking of private property for such improvement. These deliberations continued until December 24, 1936, at which time said jury found the proposed improvement a public necessity, and that it was necessary to take the appellants' and other private property for such improvement, and made substantial awards compensatory for such taking.

A review of the proceedings in this case and the testimony taken therein is convincing to this court that there was ample testimony to justify the find-

ing of the jury of the necessity of the proposed improvement, the necessity of the taking of private property, including appellants', therefor, and that the award to appellants was reasonable. Under these circumstances this court should not and will not substitute its opinion for that of the jury who heard all of the testimony, viewed the premises and in performance of their sworn duty as jurors rendered a verdict in accordance with their judgment.

Appellants further contend that the conduct of counsel for appellee who conducted the hearing was prejudicial to appellants' interest. A review of the entire record fails to disclose any conduct on the part of the city's representative that was unprofessional, unethical, or could have any tendency whatever to be prejudicial to the rights or interests of any parties concerned in this proceeding. In fact the record discloses that the conduct of all counsel participating was most exemplary.

Another question raised by counsel for appellants has to do with the competency of jurors, especially with respect to three jurors who sat on election boards during the primary election day which occurred during the pendency of the proceedings and received the usual compensation awarded to those who sit on election boards during primary elections. Counsel contends that these three jurors were employees of the city and by reason of the services rendered as members of the election board were disqualified, and that the verdict rendered should be set aside for this reason. The record does not disclose nor give grounds for inference that at the time of the examination of these jurors on their *voir dire* by counsel for appellants that they were members of the election board in their respective precincts. All that appears relative to this situa-

tion occurred on Friday, September 11, 1936, when the court propounded this question:

"How many of you jurors are on election boards?

"Three of you. Well, I suppose you want to work on the election boards?

"*Mr. Atkinson:* Sure it is $12 for each of them.

"*The Court:* That will be Tuesday, well, I will excuse this jury then until next Thursday. You gentlemen go to work on your law and get it all briefed. Then I will try and get some time to listen to your argument on the law."

The calendar entries from the record disclose the following: September 11. Trial in progress; September 17. Trial in progress; October 1. Cause adjourned to Wednesday, October 7, 1936; October 12. Trial in progress.

On October 7, 1936, counsel for appellants stated:

"At this time I move for a mistrial of this matter for the reason that three of the jurors on this jury are employees of the city election commission, and I wish to call your honor's attention to certain information in connection with it. The facts of this employment of these men by the city came to our attention just before the primaries when you asked if there were any members of the jury on the panel and three of them indicated that, that is the first information we had, they had not given this information on the *voir dire.*"

This statement by counsel could refer to none other but the following question which was asked of all of the jurors by him collectively: "Are any of you or your relatives employed in any department of the city, county, the State or Federal government at this time?" One juror replied that he had a brother who was a clerk in Judge Webster's court. This inquiry was made at the time of the selection of the jury on July 17th. We find no sup-

port for the claim that at the time of the *voir dire* examination of these jurors that they were members of an election board, but even if they were, they were not employees of the city or any department thereof. Evidently at some time prior to the primary election they were designated by the election commissioners of the city of Detroit to act as inspectors of election in their respective precincts. We might say they were appointed as such, that they were required to take an oath and act as inspectors for said election but they were not such officials of the city of Detroit as would prevent them from acting as jurors in a case in which the city was an interested party. They were not subject to discharge by any city official or any department of the city. The relation of master and servant did not exist. They were selected to act as officers of the election in their respective precincts. They had but one duty to perform and that was a sworn duty similar to the duty of a juror who had been drawn for service by the jury commission of Wayne county. Their duties, as those of jurors, are prescribed by law, that is, to perform such duties in accordance with the oath taken by each before becoming members of these boards. Neither a juror nor an election inspector can be discharged or removed except for a violation of his duty. An inspector of elections is in no sense an employee of a city, township or county. He is a sworn officer for the performance of certain particular duties, and neither this court nor any other court to our knowledge has held that an election inspector is not qualified to act as a juror in a case in which the municipality wherein he is acting as such inspector is an interested party and is disqualified as a matter of law from serving as a juror. To hold otherwise would indicate but little faith in the integrity of

those whose qualifications fit them for the performance of a public duty to respond to a summons to serve as a juror and determine the questions at issue in accordance with the law and the facts. If any one of the jurors in question had been designated by the election commissioners of the city of Detroit to act as an inspector in his precinct such fact did not disqualify him as a juror, and a challenge for cause would be of no avail. The litigant is entitled to make certain inquiries of jurors to ascertain the state of their minds and to develop facts which would justify or warrant a peremptory challenge and is entitled to true answers from prospective jurors. There is nothing in this record to indicate that any juror who was finally impaneled did not truthfully answer all interrogatories. The subsequent appointment of three of them to be election inspectors at the primary election held on September 15, 1936, and the fulfillment of the appointment by them without objection by counsel for the parties in interest is not justification for a claim of mistrial of the cause after two or three days of hearing subsequent to the primaries. In fact the contention of counsel relative to the competency of these three jurors is without any merit whatsoever.

A few other objections, more trivial, if possible, than the foregoing, have been assigned as reasons for the reversal of the judgment. We shall not take the time or space to discuss them. Appellants were deprived of no rights or privileges guaranteed to them by the Constitution or statutes of this State.

The findings and award of the jury, confirmed by the circuit court, show complete justification by the record.

The judgment is affirmed, with costs to petitioner.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Potter, JJ., concurred.