KWAISER *v.* PETERS.

DECISION OF THE COURT.

1. INTOXICATING LIQUORS—DRAMSHOP ACT—EQUALLY DIVIDED COURT.
   Verdict and judgment of no cause of action in action under
   dramshop act is affirmed by an equally divided Court (CLS
   1961, §§ 436.22, 600.230).

SEPARATE OPINION FOR REVERSAL.

BLACK, T. M. KAVANAGH, SOURIS, and O'HARA, JJ.

2. JURY—FRATERNIZATION BETWEEN PARTY AND JUROR.
   *Fraternization between defendant, his counsel, and one of the
   jurors in defendant's tavern shortly after jury returned a
   verdict of no cause of action in action for damages under the
   dramshop act* held, *not grounds for reversal, absent a showing
   of prejudice (CLS 1961, § 436.22).*

3. SAME—VOIR DIRE EXAMINATION.
   *A litigant is entitled to truthful answers from a prospective
   juror on his* voir dire *examination.*

4. SAME—QUESTIONNAIRES—FALSE ANSWERS—CHALLENGES.
   *Giving of false answers on a "juror personal history question-
   naire" by 1 of the jurors in action under dramshop act, who
   denied conviction of anything other than nonmoving traffic
   violation, when in fact he had been convicted at least 9 times
   of moving traffic violations, is grounds for granting a new
   trial since a false answer diverts counsel's inquiry on* voir dire
   *and precludes his effective exercise of his client's right to
   challenge the juror (Const 1963, art 1, § 14; CLS 1961,
   § 436.22; GCR 1963, 510).*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2] 53 Am Jur, Trial §§ 459, 900, 906.
[3–7] 31 Am Jur, Jury §§ 142, 143.

5. Jury—Questionnaires—False Answers—Challenges.

*Giving of false answers on the "juror personal history question-naire" by one of the jurors in action under dramshop act* held, *not to be ground for reversal, where juror was given no opportunity to explain the discrepancies in the questionnaire, there is nothing in the record to suggest that his answers to the questionnaire influenced the members of the jury in render-ing a verdict, there was a total absence of proof that the faulty answers resulted in a miscarriage of justice, and the jury verdict against plaintiff was by 11 of the 12 jurors (Const 1963, art 1, § 14; CLS 1961, § 436.22; GCR 1963, 510).*

6. Same—Questionnaires—False Answers.

*Proof that one juror gave inaccurate or untrue answers on the "juror personal history questionnaire" does not nullify a jury verdict and call for a new trial (GCR 1963, 510).*

7. Jury—Questionnaires—False Answers.

*Courts should be sure questionnaires answered by jurors are re-liable and truthful, and should cite for contempt a juror who has given untruthful answers, but parties to a lawsuit ought not be subjected to a new trial unless the false answers misled counsel and the result might have been affected.*

Appeal from Court of Appeals Division 3, Burns, P. J., Fitzgerald and T. G. Kavanagh, JJ., affirming Saginaw, Borchard (Fred J.), J. Submitted Janu-ary 11, 1968. (Calendar No 13, Docket No. 51,743.) Decided June 10, 1968.

6 Mich App 153, affirmed by an equally divided court.

Declaration by Gerald F. Kwaiser, Jr., against Charles B. Peters, doing business as Peter's Bar, and others for damages sustained by plaintiff under the

civil damages provision (dramshop act) of the liquor control act. Other defendants dismissed before trial. Judgment for defendant Peters. Affirmed by Court of Appeals. Plaintiff appeals. Affirmed by an equally divided court (CLS 1961, § 600.230 [Stat Ann 1962 Rev § 27A.230]).

*Joseph J. Trogan*, for plaintiff.

*Stanton, Davidson & Carl*, for defendant.

SOURIS, J. (*for reversal and remand*). We granted leave to appeal for the limited purpose of determining whether the trial court erred in denying plaintiff's motion for new trial based upon allegations that a juror improperly associated with defendant and his counsel immediately after verdict favorable to defendant and that the same juror falsely answered his personal history questionnaire required by GCR 1963, 510. 379 Mich 765. The Court of Appeals affirmed the trial court. 6 Mich App 153.

At an evidentiary hearing on plaintiff's motion for new trial, witnesses testified that within about an hour after return of the jury's verdict, the defendant tavern owner and one of the jurors entered the defendant's tavern, where they were joined soon thereafter by defendant's trial counsel and several members of counsel's law firm. At least some of the group, including the juror, were served beverages. None of the witnesses heard any of the conversation of the group of which the juror was a part.

The juror, the defendant, and the defendant's lawyers were not called by plaintiff to testify at the hearing on his motion, nor did they testify voluntarily. No other proofs were offered from which it could be found that the juror was known by the defendant or his attorneys before the trial or that they had com-

municated about the case privately before or during
the trial. In short, this record is barren of any evi-
dence that the plaintiff was prejudiced by the con-
duct of defendant, his attorneys, and the juror.
The question becomes whether, absent a showing of
prejudice, a new trial should have been granted be-
cause defendant and his attorneys fraternized with
a juror immediately after a verdict was rendered fa-
vorable to defendant.

Just recently, in *People* v. *Schram* (1966), 378
Mich 145, where the assistant prosecutor, during the
trial of a criminal case, conversed with two jurors, a
majority of this Court refused relief to the defendant
absent a showing of prejudice to him. Other crim-
inal cases were cited by our majority in *Schram* in
support of its conclusion.[1] If prejudice must be
shown affirmatively, even in a criminal case and even
when the alleged misconduct occurred during trial,
no less is required in a civil case in which the alleged
misconduct occurred after verdict. Indeed, in *Hos-
kin-Morainville Paper Co.* v. *Bates Valve Bag Corp.*
(1934), 268 Mich 443, this Court, unanimously, said
so. A majority of this Court is not prepared to over-
rule *Hoskin* and *Schram,* and the other criminal
cases cited in *Schram.* Accordingly, plaintiff's ap-
peal on this ground must fail.

At the hearing on the plaintiff's motion for new
trial, evidence was introduced to support plaintiff's
claim that the same juror answered the juror per-
sonal history questionnaire, required by GCR 1963,
510, untruthfully in several respects. For example,
he wrote on the questionnaire that he never had been
convicted of a crime or misdemeanor other than for
a nonmoving traffic violation. However, plaintiff's
evidence showed that the juror had been convicted

---

[1] *People* v. *Kangas* (1962), 366 Mich 201; *People* v. *Nick* (1960),
360 Mich 219; *People* v. *Pizzino* (1945), 313 Mich 97, and *People*
v. *Whittemore* (1925), 230 Mich 435.

for moving traffic violations at least nine times from
1953 through 1963.[2]  Again, with reference to this
aspect of the inquiry before the trial court, the
juror was not called to testify by either party.  On
this record, therefore, and for the purpose of this de-
cision only, we must conclude that the juror perjured
himself in answering as he did his juror's question-
naire.

We have held that a party is entitled to truthful
answers from a prospective juror during his *voir
dire* examination.  *Wood* v. *Henley* (1941), 296 Mich
491, 497, and *In re Petition of City of Detroit to Con-
demn Lands for Sewage Disposal Plant* (1937), 280
Mich 708, 716.  In *Wood, supra,* a juror failed to
disclose an indebtedness to the plaintiffs.  When
plaintiffs discovered this fact, during trial, their
motion for mistrial based thereon was denied on the
ground that plaintiffs had every opportunity to know
the facts before trial commenced and, in any event,
mere indebtedness to a party, it was said, does not
disqualify a juror.  *Wood,* however, does acknowl-
edge the general proposition that litigants are en-
titled to truthful answers on *voir dire.*  No reason
has been suggested to us for reaching a contrary con-
clusion with reference to the juror's questionnaire
required by our court rules only since January 1,
1963.

In this case, unlike *Wood, supra,* the juror's false
answer was not such that either litigant could have
known the facts except fortuitously.  Furthermore,
had the question been answered truthfully, it is
much more likely than not that further inquiry would
have been made by either counsel or by both at the

[2] Other evidence tends to support plaintiff's claims that the juror
answered other questions falsely, but we need not advert to these
other claims, considering that they are cumulative and that the
evidence supporting them is not as certain as is the evidence of the
juror's moving traffic convictions.

*voir dire* examination. As has been said before, a litigant's right to trial before an impartial jury (Const 1963, art 1, § 14) requires that he be given an opportunity to obtain the information necessary to challenge prospective jurors for cause or peremptorily. *Bunda* v. *Hardwick* (1965), 376 Mich 640 (dissenting opinion).

A false answer on a juror's questionnaire, such as was given here, diverts counsel's inquiry on *voir dire* and thereby precludes his effective exercise of his client's right to challenge the juror. If we are to insist upon counsel's use of the questionnaire to facilitate and expedite *voir dire* examinations (see *Fosness* v. *Panagos* [1966], 376 Mich 485), we must be prepared to assure counsel that the questionnaires are reliable in every *material* respect and, if they are not, we should be prepared to order a new trial as well as to cite the errant juror for contempt of court. The trial court, as far as this record shows, did neither in this case.

I would reverse and remand for new trial. Plaintiff should be allowed to tax his costs.

Black, T. M. Kavanagh, and O'Hara, JJ., concurred with Souris, J.

Kelly, J. *(for affirmance)*. I do not agree with Justice Souris' reversal and remand for new trial. I vote to affirm.

Juror Ruffus Thomas' answers on the form entitled "Juror Personal History Questionnaire" disclosed that he had been a resident of Saginaw county for 18 years; that he was 43 years old, married, and lived at home with his 7 children between the ages of 11 and 4; that he was employed at the Saginaw Malleable Iron Works as a "chiper"; that he had previously been employed as a barber; that he only had a seventh-grade education; that he owned a car in-

sured with "Fenix Insurance Co."; that he had been
in an accident and that his wife had also been in an
accident; that he had never served as a juror be-
fore filling out the questionnaire.

During the course of the trial, juror Ruffus
Thomas asked the court to be excused from jury duty
because of his sister's death and his father's involve-
ment in a serious automobile accident. A conference
with the attorneys was held in the judge's chambers,
and the court suggested that juror Thomas be re-
leased from further duty and the case be allowed to
proceed to a verdict by 10 of 11 jurors. Defendant's
counsel agreed, but plaintiff's counsel would not, and
insisted that Thomas remain on the jury. The court
thereupon adjourned the trial to allow juror Thomas
to make a trip to Tennessee.

This was an action against Charles B. Peters, do-
ing business as Peter's Bar, under the civil damages
provision of the so-called "dramshop act."[1] The sole
question for jury determination was whether or not
the defendant, Charles B. Peters, or his agents, serv-
ants, or employees, served alcoholic beverages to
one Harvey Krause so as to cause or contribute to
his intoxication.

The July 13, 1965, entry in the "Docket Entries"
in this case is as follows:

"Verdict of jury (4:10 p.m.). No cause for action.
Jury was polled, 11 jurors affirming and 1 juror dis-
senting. Jury excused from further deliberations in
this cause. Motion by plaintiff for 20-day stay of
execution granted by the court."

No proof has been submitted to this Court as to
how juror Ruffus Thomas voted. Conceding that
he voted against plaintiff's claim, the record shows
that there still would be 10 jurors voting "No cause

---

[1] CLS 1961, § 436.22 (Stat Ann 1968 Cum Supp § 18.993).

of action," in addition to Thomas. And 10 jurors agreeing upon a verdict is sufficient to sustain the verdict.[2]

We quote from the decision of the Court of Appeals affirming the judgment, 6 Mich App 153, 161, 162:

"Plaintiff does not argue that he would have challenged the juror in question had the erroneous responses been revealed prior to trial.

"It is interesting to note that the juror was limited to a seventh grade education and that he was not called to explain the discrepancies in the questionnaire. In answering the questionnaire he stated that he had insurance and listed the company as 'Fenix Insurance Company.' The problem remains: Did the juror misspell the company name or, as plaintiff implies, was he uninsured? Plaintiff has neglected to inform us and evidently has not attempted to ascertain this information. The juror admitted he had been involved in an automobile accident and that his wife had been involved in an accident. Surely these are pertinent answers calling for additional exploration by counsel. However, counsel did not pursue this leading information. It can also be observed that the juror originally answered question 43 on the questionnaire, which was: 'Have you ever been convicted of a crime or misdemeanor (other than for a nonmoving traffic violation)?' with a 'Yes' answer. This was erased and answered, 'No.'

"There may be an explanation for these discrepancies, but evidently counsel was not interested in an explanation but only in creating error. Plaintiff has not convinced this Court that he was unduly preju-

---

[2] Const 1963, art 1, § 14: "The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law. In all civil cases tried by 12 jurors a verdict shall be received when 10 jurors agree."

PA 1963 (2d Ex Sess), No 17, added section 1238 to the revised judicature act, as follows: "In all civil cases tried after January 1, 1964 by 12 jurors, a verdict shall be received when 10 jurors agree." (MCLA § 600.1238 [Stat Ann 1968 Cum Supp § 27A.1238]).

diced by juror Thomas' answers to the jury question-naire."

Nothing in this record even suggests that juror Ruffus Thomas' answers to the questionnaire influenced the members of the jury in rendering a verdict, and there is a total absence of proof that those faulty answers resulted in a miscarriage of justice.

We have never in the past and should not now hold that proof that one juror gave inaccurate or untrue answers on the questionnaire nullifies a jury verdict and calls for a new trial.

Affirmed. Costs to appellee.

DETHMERS, C. J., and T. E. BRENNAN, J., concurred with KELLY, J.

ADAMS, J. (*for affirmance*). I agree with Justice SOURIS that the courts should see to it that the questionnaires answered by jurors are reliable and truthful in every material respect. A juror who has given untruthful answers should be cited for contempt and duly punished if found guilty. On the other hand, the parties to a lawsuit ought not to be subjected to a new trial unless the false answers are shown to be such that counsel was misled and that the result might have been affected. In this case I agree with Justice KELLY that there is "a total absence of proof that those faulty answers resulted in a miscarriage of justice." I, therefore, vote to affirm the Court of Appeals, with costs to appellee.

T. E. BRENNAN, J., concurred with ADAMS, J.