GUSTAFSON v MORRISON

1. JURY—JUROR PERSONAL HISTORY QUESTIONNAIRE—PEREMPTORY
   CHALLENGES—FALSE ANSWERS—CONTEMPT OF COURT.

   The purpose of the Juror Personal History Questionnaire is to
   enable the attorneys intelligently to exercise their peremptory
   challenges; failure to answer or the giving of a false answer by
   a prospective juror constitutes contempt of court (GCR 1963,
   510).

2. APPEAL AND ERROR—NEW TRIAL—JURY—JURY QUESTIONNAIRE—
   FALSE ANSWERS—ABUSE OF DISCRETION.

   Review of a refusal to grant a new trial because a juror had made
   untruthful statements in a jury questionnaire is limited to a
   determination of whether the trial court abused its discretion.

3. JURY—VOIR DIRE—JURY QUESTIONNAIRE—FALSE ANSWERS—OBJEC-
   TIONS—WAIVER—NEW TRIAL.

   A party is entitled to a truthful answer from a prospective juror
   during his voir dire examination and has a right to rely upon
   the truthfulness of a jury questionnaire; however, a party who
   is aware of any circumstance affecting the qualifications or
   competency of a juror is bound to make his objection before the
   jury is sworn, and, if he fails to do so, he is deemed to have
   waived the objection and cannot after an adverse verdict assert
   it as a ground for a new trial.

4. NEW TRIAL—JURY—VOIR DIRE—FALSE ANSWERS—ACTUAL PREJU-
   DICE—SUCCESSFUL CHALLENGES.

   A party moving for a new trial upon discovery of a juror's false
   statements after a trial and verdict must show something more
   than just the mere fact of the falsity of the answers; there must
   either be a showing of actual prejudice or it must be estab-
   lished that the moving party would have successfully chal-
   lenged for cause or otherwise dismissed the juror in question
   had the truth been revealed prior to trial.

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur 2d, Jury §§ 208, 209.
[2–5] 47 Am Jur 2d, Jury § 212.
  58 Am Jur 2d, New Trial §§ 48, 49.

5. NEW TRIAL—ABUSE OF DISCRETION—JURY—VOIR DIRE—FALSE AN-
   SWERS—ATTORNEY AND CLIENT—PRIOR LITIGATION—ADVERSE
   PARTY—CHALLENGE TO JUROR—JURY VOTE.

Refusal to grant a new trial because a juror gave false answers
on a jury questionnaire and on voir dire was an abuse of
discretion where the juror had been involved in several prior
lawsuits and had twice been a party adverse to the law firm
retained by the plaintiff, plaintiff's counsel diligently attempted
on voir dire to ascertain whether any of the prospective jurors
had previously been involved in court actions or had had any
dealings with his law firm, plaintiff established that he would
have successfully challenged the juror for cause if the juror had
truthfully answered the question on voir dire, and the verdict
based upon a five-to-one vote could not stand without the vote
of the juror in question (MCLA 600.1352).

Appeal from Bay, John X. Theiler, J. Submitted
Division 3 November 6, 1974, at Lansing. (Docket
No. 15926.) Decided January 27, 1975. Leave to
appeal applied for.

Complaint by Viola Gustafson (Alice E. Davis,
successor fiduciary), administratrix of the estate of
Marie J. Gustafson, deceased, against John H.
Morrison and Wayne Transportation Company for
damages for wrongful death arising out of an
automobile accident. Judgment for defendants.
Plaintiff appeals. Reversed and remanded for a
new trial.

*Smith & Brooker, P. C.* (by *Richard G. Smith*),
for plaintiff.

*Heilman, Purcell, Tunison & Cline, P. C.,* for
defendants.

Before: QUINN, P. J., and McGREGOR and
O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

McGREGOR, J. This is a wrongful death action which arose out of a motor-vehicle collision on the foggy morning of September 23, 1968, near the intersection of US-10 and M-47, in Bay County. Plaintiff appeals from a 5–1 jury verdict of no cause of action. While numerous errors are raised on appeal, all, save one, are without merit.

The question before this Court is whether the trial court erred in failing to grant plaintiff's motion for a new trial on the grounds that juror Donald Knisley gave false answers in response to questions on his jury questionnaire and upon voir dire examination, thereby depriving plaintiff of the effective exercise of her right to challenge juror Knisley either for cause or peremptorily.

The form for the Juror Personal History Questionnaire is enumerated in GCR 1963, 510. The rule requires that the questionnaire be completed truthfully by every prospective juror; failure to answer or the giving of a false answer constitutes contempt of court. The purpose of the question- naire is to enable the attorneys intelligently to exercise their peremptory challenges. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 452–458.

The record reveals that juror Donald Knisley answered questions 36 through 39, 43, and 47, as follows:

"36. Have you been in an accident? (Explain): No.

"37. Were you injured? No response.

"38. Was anyone else injured? (Explain): No response.

"39. Has any member of your family or a close friend ever been in an accident? If so, explain: No.

* * *

"43. Have you ever been convicted of a crime or misdemeanor (other than for a non-moving violation)? No.

* * *

"47. Have you ever been a party to any suit, either civil or criminal? No."

The record reveals an extensive voir dire examination of the jurors by the court and counsel for both parties. In particular, the jurors were specifically questioned regarding any possible relationship with any of the attorneys in the case or members of their firms. The members of the firms were identified by name on the record in the presence of the entire panel. Juror Knisley was specifically asked by the court if he knew "any of the attorneys whose names have been mentioned". He replied, "All names I have heard, I can't recollect any of them". The court also asked Mr. Knisley "Have you ever been involved in a law suit?", to which Mr. Knisley responded, "No, your Honor".

The next juror seated after Mr. Knisley was Mr. Roznowski. In response to questions during the voir dire, juror Roznowski stated that he was not acquainted with any of the attorneys or members of their law firms, but that he had been involved in litigation. This litigation was settled out of court. Plaintiff's counsel interrupted at that point and suggested that Mr. Roznowski be questioned concerning the identity of the attorneys who were involved in that case. Mr. Roznowski stated that he could not remember the name of the attorney who represented his opposition in that case. Plaintiff's counsel suggested that it was a member of his law firm, James Tarter. Juror Roznowski again stated that he could not recall the identity of the attorney but affirmed his belief that even if plaintiff's attorneys had represented the other side, he did not feel that this would affect his rendering an impartial verdict in the case at bar.

Mr. Roznowski was challenged for cause by the plaintiff. The challenge was sustained after the court determined that plaintiff's law firm had represented the juror's adversary in a previously litigated matter.

The jury, comprised of Mr. Knisley and five women, was sworn; a seventh juror was excused. Following the trial, the jury deliberated from 2:20 p.m. April 25, 1972, until 1:52 p.m. April 28, 1972, when they announced their verdict of no cause of action through their foreman, Mr. Knisley. The jury was polled: five jurors, including Mr. Knisley, stated that the announced verdict was their verdict. One juror stated that it was not.

Plaintiff's counsel filed a motion for a new trial after discovering that Mr. Knisley had falsely answered certain questions on the jury questionnaire and on voir dire. Plaintiff's motion was denied by the trial court, and plaintiff appeals.

On August 10, 1973, this Court remanded the appeal to the circuit court for an evidentiary hearing on the conduct of the juror; this Court retained jurisdiction. The hearing was held on October 26, 1973, and the entire record of the case was forwarded to this Court for consideration of the plaintiff's appeal, made as of right, from the judgment and denial of a new trial.

The evidentiary hearing reveals that Mr. Knisley did, in fact, give certain false answers on the jury questionnaire and during voir dire. While Mr. Knisley stated that no one in his family had ever been in an accident, in truth, his wife had been injured in 1964 in an explosion of a gas heater. She filed suit to recover for personal injuries suffered in that accident; the case proceeded toward trial, and depositions were taken in the office of her attorneys. Mr. Knisley gave a deposition at

that time. The suit was settled before trial, and Mr. Knisley received $500.

In 1962, Mr. Knisley's daughter sustained injuries resulting from an accident in which she was struck by a vehicle while she was crossing a street. A lawsuit was instituted in her behalf which resulted in a settlement of $650 paid to the wife of juror Knisley. Mr. Knisley himself, in that suit, was paid the sum of $75 in settlement of any claim he had against the defendant.

Although juror Knisley heard the names of the members of the law firm which represented the plaintiff in the instant matter, and was specifically asked whether he knew any of the attorneys, he stated that he could not recall any of them. In fact, Mr. Knisley had twice been a party adverse to the attorneys of the law firm retained by the plaintiff herein. Mr. James Tarter, a member of the law firm which represented this plaintiff, was engaged by the adverse interest in the lawsuit which arose out of Mr. Knisley's wife's accident. It was Mr. Tarter who took Mr. Knisley's deposition in that lawsuit. Further, another member of the law firm which represented this plaintiff also represented the adverse party in the civil action which arose out of the automobile accident in which Mr. Knisley's daughter was injured.

On January 17, 1970, Mr. Knisley and his wife were involved in a traffic accident in which his wife sustained minor injuries. The damages to Mr. Knisley's automobile in that accident were over $500. Two days after the accident, Mr. Knisley's insurer informed him that the occupants of the other car also sustained injuries in that accident. Although Mr. Knisley stated at the evidentiary hearing that he considered this accident to be an "incident" and, therefore, did not disclose its oc-

currence in his questionnaire or on voir dire, he is presently being sued for $265,000 as the result of this "incident".

In answer to question #43 on the jury questionnaire, Mr. Knisley stated that he had never been convicted of a crime or misdemeanor other than a non-moving traffic violation; in fact, Mr. Knisley, in April, 1970, pled guilty to the charge of speeding on US-10, the very freeway upon which plaintiff in the case at bar claimed that the defendant was speeding at the time of the accident. Mr. Knisley explained his negative answer by stating that he did not feel he had been convicted since he had never gone to court.

In its opinion denying plaintiff's motion for a new trial, the court stated:

"We are not satisfied that these facts sufficiently show that the juror was wilfully withholding information in order that the truth would not [come] out and thus prevent the attorney from making an intelligent decision as to whether to challenge or not to challenge. * * * We are unable to say that we are satisfied that the failure to answer properly as now shown by these records was done wilfully or intentionally and that it is entirely conceivable that the answers were the result of misinterpretation of questions or the failure of the juror's memory. * * *

"Fair and truthful answers are certainly to be expected on the part of prospective jurors, but we naturally have a strong reluctance to upset jury verdicts after a full and complete trial of [the] cause and after full and complete deliberations by the jury except on a showing that the juror was in fact answering untruthfully and was in fact concealing information. Stated another way, the untruthful action must have some causal connection and be of some significance in the production of an improper verdict or at least raise serious questions as to the verdict's propriety. If in fact, the answers are the result of forgetfulness, it is difficult

to see how then the actual facts could have affected the verdict on the part of that juror."

The decision of the lower court in these matters is not made as a matter of law but, rather, is decided on the facts. *Clemmons v Super Food Services, Inc,* 3 Mich App 377; 142 NW2d 491 (1966). Our review is therefore limited to a determination of whether the trial court abused its discretion in denying plaintiff's motion for a new trial. *Grist v The Upjohn Co,* 16 Mich App 452; 168 NW2d 389 (1969).

While we, like the trial court, are hesitant to overturn a jury verdict on the grounds of untruthful statements on the part of one of the jurors, we have concluded, based on our review of the entire record, that the trial court abused its discretion in denying plaintiff's motion for a new trial, based on the particular facts presented in this case.

Defendants claim, on appeal, that the trial court properly denied plaintiff's motion for a new trial and base their argument on *Kwaiser v Peters,* 381 Mich 73; 158 NW2d 877 (1968). However, unlike the situation presented in *Kwaiser,* the record reveals how each juror voted in the case at bar. In this case, juror Knisley voted for the verdict of no cause of action and the jury split 5–1 for the defendant. In *Kwaiser,* there was no proof as to how the juror voted, and the court stated that, even if the juror in question voted for the defendant, the verdict would still stand, since the numerical division, minus the juror's vote, would then be 10–2 for no cause of action. In the case at bar, the verdict cannot stand without Mr. Knisley's vote. MCLA 600.1352; MSA 27A.1352. Further, plaintiff in the case at bar, unlike the plaintiff in *Kwaiser,* argued vigorously that he would have challenged

the juror in question had the erroneous responses been revealed prior to trial.

A party is entitled to a truthful answer from a prospective juror during his voir dire examination and has a right to rely on the truthfulness of a jury questionnaire. However, a party who is aware of any circumstance affecting the qualifications or the competency of a juror is bound to make his objection by way of challenge before the jury is sworn and, if he fails to do so, he is deemed to have waived the objection and cannot, after an adverse verdict, assert it as a ground for a new trial. Defendants contend that the trial court was correct in denying plaintiff's motion for a new trial since plaintiff's counsel was not diligent in discovering that they had represented an adverse interest to the prospective juror. We cannot agree. Diligence in this matter need extend no further than a careful inquiry of a prospective juror under oath. *Clemmons, supra.*

Plaintiff's counsel diligently attempted on voir dire to ascertain whether any of the prospective jurors had previously been involved in civil actions or had had any dealing with his law firm. Counsel for the plaintiff should have been able to rely on the statement of the juror in these matters, and is not required to check through multitudinous files to ascertain whether prospective jurors have been associated adversely with their law firm. Based upon the juror's answers, plaintiff's counsel validly assumed that Mr. Knisley had never been involved in any such legal matters whatsoever.

A person sitting on a jury panel is presumed to be qualified and competent to serve, and the burden is on the challenging party to make out a prima facie case to the contrary. *Lee v Misfeldt,* 1 Mich App 675; 137 NW2d 753 (1965). However,

upon discovery of a juror's false statements after a trial and verdict, a moving party must present to the court something more than the mere fact of the falsity of the answers. A moving party must present proof of actual prejudice on the part of that juror or establish that the juror was unqualified, thereby rendering the jury an improperly constituted tribunal. The moving party may make such a showing in one of two ways. The alternative methods of demonstrating that a trial court has abused its discretion in refusing to grant a new trial are enumerated by Judge (now Justice) THOMAS G. KAVANAGH, in *Citizens Commercial & Savings Bank v Engberg*, 15 Mich App 438, 440; 166 NW2d 661 (1968), as follows:

"There must either be a showing of actual prejudice (see *People v Schram*, 378 Mich 145; 142 NW2d 662 [1966]), or it must be established to the satisfaction of the trial court that the moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial."

In the case at bar, plaintiff successfully challenged for cause juror Roznowski, since plaintiff's counsel had previously represented an interest adverse to Mr. Roznowski. The court sustained this challenge, notwithstanding the fact that Mr. Roznowski could not remember the name of the attorney who represented his opposition in that case and stated affirmatively that he could, nonetheless, render an impartial verdict in the case at bar. Plaintiff has, therefore, established to the satisfaction of this Court that, had Mr. Knisley truthfully answered the questions on voir dire, plaintiff would successfully have challenged him for cause. GCR 1963, 511.4(11). We find, therefore, that the

trial court abused its discretion in refusing to grant a new trial.

Reversed and remanded for a new trial.

All concurred.